[Cite as *State v. Hodge*, 2020-Ohio-3002.]

COURT OF APPEALS
FAIRFIELD COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  | JUDGES: |
|---|---|---|
| STATE OF OHIO | : | Hon. W. Scott Gwin, P.J. |
|  | : | Hon. John W. Wise, J. |
| Plaintiff-Appellee | : | Hon. Patricia A. Delaney, J. |
|  | : |  |
| -vs- | : |  |
|  | : | Case No. 2019 CA 00035 |
| JOSEPH HODGE | : |  |
|  | : |  |
| Defendant-Appellant | : | OPINION |

CHARACTER OF PROCEEDING: Criminal appeal from the Fairfield County Court of Common Pleas, Case No. 2018CR114

JUDGMENT: Affirmed in part; Vacated in part

DATE OF JUDGMENT ENTRY: May 19, 2020

APPEARANCES:

For Plaintiff-Appellee

R. KYLE WITT
Fairfield County Prosecutor
BY: CHRISTOPHER REAMER
239 West Main Street
Suite 101
Lancaster, OH 43130

For Defendant-Appellant

JAMES ANZELMO
446 Howland Drive
Gahanna, OH 43230

*Gwin, P.J.*

{¶1}   Defendant-appellant Joseph D. Hodge ["Hodge"] appeals his convictions and sentences after a jury trial in the Fairfield County Court of Common Pleas.

*Facts and Procedural History*

{¶2}   On December 30, 2017, C.D. made a report to the Fairfield County Sheriff's Office that one of his two Texas Bragg LEO trailers had been stolen.  The stolen trailer had wooden sides to enable the trailer to be used to haul material.  The two trailers had sequential license plates that differed only in the last numeric position.  The trailer had been stolen from C.D.'s property on Carroll Northern Road, Fairfield County.  The Carroll Northern property is agricultural and only used by C.D. to store his equipment as he lives a distance away.

{¶3}   C.D. believed the trailer had been taken on December 30, 2017 as he had been checking the rural farmland property frequently due to prior trespasses.  On December 30, 2017, C.D. checked the property and observed tracks in the fresh snow leading back into his field toward where his equipment was stored.  C.D. believe someone had entered the property without his consent as he observed fresh snow on the roadway that appeared to have come off tires leaving his property. C.D. told the police that G. J. and W. H. might be possible suspects in the theft of his trailer.

{¶4}   Previously, on October 7, 2017, R.F. III, whose parents own a nearby home to C.D.'s property, had observed the lights of a vehicle on C.D.'s property.  R.F. observed a truck drive around C.D.'s gate and entered the property.  R.F. thought it was strange for the truck to enter CD's property and went outside to observe what

was happening.  R.F. ended up waving a man over who identified himself to R.F. as "Joe."  The man had a goatee and drove a grayish Chevrolet Silverado.

{¶5}　　On January 27, 2018, R.S. reported to the Fairfield County Sheriff's Office that an Oliver tractor had been stolen from a property adjoining his property on Leonard Road, Baltimore, Fairfield County, Ohio.  R.S. is a retired equipment mechanic who also engaged in farming activities.  R.S. functioned as a caretaker of the property and equipment of his neighbor A.H. who resided in Kansas.  A.H. had given R.S. permission and the right to use the equipment on the property.  A.H. had a tractor that R.S. frequently used in mowing and brush hogging.  The tractor was an older Oliver tractor. The original wheels had been replaced with yellow John Deere wheels instead of the typical white colored Oliver brand wheel.  The Oliver tractor was used and stored with a red bucket/loader attached to it.  R.S. valued the Oliver tractor and bucket as a package to be worth $2,000 to $3,000.

{¶6}　　While out walking on the morning of January 27, 2018, R.S., walked down the road past A.H.'s property and observed fresh mud tracked onto the road.  R.S. checked the garage and discovered the Oliver tractor with John Deere wheels was not inside the garage where it was stored and that the red bucket/loader was laying unattached in a nearby yard.

{¶7}　　Deputy Michael J. Schell, Jr., of the Fairfield County Sheriff's Office responded to 900 Leonard Road, Baltimore, address regarding the stolen Oliver tractor on January 27, 2018.  Deputy Schell arrived on scene around 4:28 p.m.  In checking the scene, Schell took a report and noted that a red bucket loader was lying on the ground near the garage from which the Oliver tractor had been taken. After R.S. had

made his police report on January 27, 2018, the red bucket loader was also taken from the property.

{¶8} Deputy Justin Mann of the Fairfield County Sheriff's Office worked third shift from 11:00 p.m. January 27 into January 28, 2018. Deputy Mann has knowledge of a neighborhood that included Knob Hill Drive, in Pataskala, Licking County, Ohio. Deputy Mann also knew Hodge prior to January 28, 2018 from seeing Hodge in the Knob Hill Drive area. Deputy Mann also knew Hodge to drive a 2500 series Chevrolet Silverado pickup truck from seeing it in the Knob Hill Drive area. Hodge's girlfriend, Jessica Eblin, owned the pickup truck. 2T. at 268[1]. Several days prior to his shift on January 27 - 28, 2018, Mann had observed a unique older model Oliver tractor with yellow John Deere tires at 25 Knob Hill Drive. Eblin owned the residence at that location. Id. The tractor was inside a flatbed trailer that had wooden sides attached.

{¶9} Prior to the start of Deputy Mann's shift at 11:00 p.m. on January 27, 2018, Deputy Mann spoke to Deputy Schell. Deputy Schell gave Deputy Mann details about a missing Oliver tractor with John Deere yellow wheels. Deputy Mann immediately thought of the Oliver tractor in Eblin's driveway. Later Deputy Mann got permission to return to 25 Knob Hill Drive with another deputy from the Fairfield County Sheriff's Office.

{¶10} Upon his arrival, Deputy Mann observed that the Chevrolet Silverado that Hodge was known to drive had a red bucket/loader lying in the bed of the truck. Deputy Mann had not previously seen a red bucket/loader at Eblin's residence.

---

[1] For clarity, the jury trial transcript will be referred to as, "__T.__," signifying the volume and the page number.

Deputy Mann was also familiar with Hodge's girlfriend who owned 25 Knob Hill, Jessica Eblin. Mann later called for the assistance of the Licking County Sheriff's Office to respond to 25 Knob Hill regarding the suspected stolen Oliver tractor.

{¶11} Deputy Jeremy Wolverton of the Licking County Sheriff's Office responded along with others to Eblin and Hodge's residence at 25 Knob Hill. Upon arrival, Deputy Wolverton observed an Oliver tractor sitting on the Texas Bragg LEO trailer in the driveway of the residence. Also in the driveway was the Chevrolet Silverado registered to Jessica Eblin bearing plate HHT 2124. The Silverado contained a red bucket/loader. After knocking on the door, Wolverton contacted Eblin and Hodge. As Wolverton spoke with Hodge and Eblin regarding the stolen status of the Oliver tractor and the trailer, Hodge contended he had purchase documents for the equipment. During the time Wolverton worked to impound all the suspected stolen property, Hodge never produced the claimed purchase documents. Eblin did not explain how the property came to be in her driveway. 2T. at 272. Eblin told the police that "until she could figure out what was going on," she was not granting the police permission to look at the trailer. 2T. at 281. She stated that she had just woken up and wanted to consult with her attorney. Id. Deputy Wolverton testified that Eblin's request was not unreasonable under the circumstances. 2T. at 282. Hodge claimed he had purchased the Oliver tractor and Texas Bragg LEO trailer from a man named, "Mark Downing" in what Hodge referred to as a "third party deal." 2T. at 284, 285.

{¶12} On January 29, 2018, Detective Kelli Stats, of the Fairfield County Sheriff's Office was assigned to follow up on the initial theft reports taken from victims C.D. and R.S. On that same day, Deputy Stats received a telephone call from Hodge

regarding the status of the property taken from the 25 Knob Hill address.  Hodge told Deputy Stats that he had obtained the Oliver tractor and Texas Bragg LEO trailer from an auction house and had bills of sale.  The call between Deputy Stats and Hodge was recorded and played for the jury as State's Exhibit 10.  During the call, Hodge told Deputy Stats that he had received the trailer on January 13, 2018 and the Oliver tractor on January 26, 2018.  Hodge reported receiving the Oliver tractor in the late evening hours of January 26 into January 27, 2018 by meeting the seller at the intersection of State Route 158 and Leonard Road.  Hodge informed Stats during the phone call that the seller/auction representative was a "Mark Downing" but that Downing's phone number was no longer working and the Craigslist postings for the sales could no longer be found.  Hodge informed Stats he was not good with computers but would have his girlfriend, Jessica Eblin, email copies of the bills of sale for the Oliver tractor and Texas Bragg LEO trailer to the Deputy.  Deputy Stats noted that Hodge's last self-reported contact with "Mark Downing" was in the late evening of January 26, 2018 at a location directly beside where the Oliver tractor was stolen.

{¶13} Deputy Stats later received bills of sale from Jessica Eblin by email. Hodge later hand delivered copies of the same bills of sale to Deputy Stats when she met him to collect a handwriting exemplar.  Deputy Stats noted that the bill of sale for the Oliver tractor (State's Exhibit 5A) included a sale date of January 13, 2018; however, Hodge verbally told her during the telephone conversation on January 29, 2018, that he purchased the Oliver tractor on January 26, 2018.  Similarly, the bill of sale for the Texas Bragg LEO trailer contained a sale date of January 26, 2018; however, Hodge had previously told Deputy Stats that he obtained the trailer January 13, 2018.  (State's

Exhibit 5B).  Deputy Stats would later collect a handwriting exemplar (State's Exhibit 6) from Hodge that was sent to the Ohio Bureau of Criminal Investigation for comparison to the purported bills of sale supplied by Hodge.  Deputy Stats performed checks of both law enforcement databases and typical social media accounts but never found any match of a "Mark Downing" in or around the Fairfield County area. The phone number provided by Hodge for Downing was not a working number.

{¶14}   In February 2018, J.D. was a retired school teacher that co-owned a pasture/agricultural property with his sister D.D. on Snoke Hill Road, Lancaster, Ohio. In addition to a cabin, the property included several pole buildings for storage.  The lane to the buildings was gated and a lock secured the sliding door on the storage building.  On February 14, 2018, J.D. noticed heavy tire track marks/ruts on his lane into the property on Snoke Hill Road.  The gate inside had been moved to allow entry and several trees/limbs had been cut or cleared from the lane.

{¶15} In February 2018, J.D. was spending significant time away from the property to care for his sister D.D. who was in a nursing home.  D.D. had passed away prior to trial. On February 16, 2018, J.D. had visited the property on Snoke Hill and observed some more ruts in the driveway/lane.  J.D. decided to wait behind some trees of a nearby business and observe his property.  As J.D. was positioned in the business parking lot, he observed a truck pull into the driveway of his now deceased parents near his Snoke Hill property.  The truck then left that property and drove directly to the Snoke Hill property where it entered the lane and drove back toward the pole barns.  J.D. immediately called the Fairfield County Sheriff's Office.

{¶16} When deputies first arrived, J.D. described the pickup and attached trailer for them and waited out at the end of the lane until told he could go back to his property by the police.  J.D. identified Hodge as the man he had seen on his property on February 16, 2018.  Once J.D. had been allowed to go back to the deputies, he was able to overhear some of Hodge's claims as to why he could enter the property. Hodge claimed he had contacted J.D.'s sister; however, J.D. reported that the phone number was to a landline that had been disconnected 4 years earlier.  Hodge claimed the property was for sale but there was no for sale sign located on J.D.'s property nor had J.D. listed the property.  J.D. also noted that the chain securing the door of his pole barn had been cut on February 14, 2016, that the main sliding door was pulled off the track, and that Hodge's truck and trailer contained property that had been secured inside the pole barn. Hodge continued to address J.D. with profanity and verbal abuse until deputies decided to arrest Hodge.

{¶17}  Deputies Ben Martens and Aaron Agosta were dispatched in response to J.D.'s call to the Fairfield County Sheriff on February 16, 2018.  Deputy Martens recalled that upon contact, Hodge made several different claims why he had permission to be at the property.  Deputy Martens noted that the truck driven by Hodge was a Chevrolet bearing license plate HHT 2124.  Deputy Agosta recalled Hodge claiming the property was listed for sale, that he thought J.D. was dead, and that Hodge had set up a meeting with D.D., the ill sister of J.D. Deputy Agosta noted that the items contended as trash by Hodge had been identified on the scene by J.D. as having come from inside his pole barn. Deputy Agosta arrested Hodge after he became verbally abusive toward J.D.

{¶18} After arriving at the jail, Hodge's hostility continued and was directed toward Deputy Agosta. Hodge called Deputy Agosta a, "pussy" a "bitch" and told Agosta he (Hodge) would wait until he caught Agosta on the street. (2T.at 340, 341). Deputy Agosta was wearing a memorial badge for a then recent police slaying and Hodge made the statement that it was because of officers like him [Agosta] that he was wearing that on his badge. Deputy Agosta noted that he took Hodge's statements as a real threat; however, the deputy admitted, "it's nothing that I haven't heard before." 2T. at 341. He further noted that upon being searched at the jail, Hodge volunteered to the officer that he had a pocketknife. 2T. at 342. No other weapons were found on Hodge. Id. Deputy Agosta noted that Hodge was angry when he made the statements. Id. at 345. Deputy Agosta did not change anything he was doing with Hodge because of the threats. Id.

{¶19} On February 20, 2018, a single count complaint and warrant was filed against Hodge for one count of Breaking and Entering in violation of R. C. 2911.13 (A) and/or (B), a felony of the fifth degree. On February 22, 2018, Hodge posted bond and was released.

{¶20} On October 22 or 23, 2018, T.M. dropped off his Sunnybrook travel camper at Eastside Storage. T.M. had locked/secured the hitch and it was still positioned where he had parked the camper when he drove past later that evening. The system employed at Eastside Storage was that the owner of the camper or boat would drop off the property for storage outside the gate and the next day it would be taken inside and secured. T.M. valued his Sunnybrook camper at $5,000 to $7,000. T.M. confirmed he did not know a Joe Hodge. The camper was stolen sometime in the

early morning hours. Although a neighboring business captured images of a truck backing up and towing the trailer away, it did not capture the driver or the license plate number. It was dark and difficult to clearly determine the make and model of the suspect truck.

{¶21} On October 27, 2018, Officer Brian Bell and Officer Kurt Torres responded to 152 North Main, Roseville, Ohio regarding a tip on T.M.'s stolen camper. Officers Bell and Torres contacted a male that identified himself as "Joe Archer" and gave a date of birth. Once it was determined no "Joe Archer" matching the information existed, the individual gave his social security number, which came back to Hodge. Hodge was present at the property with his girlfriend, Jessica Eblin. Officers Bell and Torres also observed a camper trailer matching the tip for T.M.'s stolen trailer and a Chevrolet Silverado with lights on top and a toolbox mounted directly behind the cab with no truck bed. Hodge reported his friend, "Adam West", had allowed him to borrow the Sunnybrook trailer and he had picked it up in Zanesville. Officer Bell confirmed the trailer was T.M.'s by comparing the serial number. Hodge's girlfriend was present when he gave the initial false identity and when he stated he got the Sunnybrook camper from "Adam West". Both Hodge and the girlfriend had to remove personal property from inside the Sunnybrook camper prior to police impounding the camper.

{¶22} Forensic scientist Rebecca Barrett of the Ohio Bureau of Criminal Investigation testified during Hodge's jury trial. Ms. Barrett's training and expertise is in the questioned documents section, which involves examining handwriting and documents for authorship and authenticity. Ms. Barrett reached an opinion that the handwritten portions of the two bills of sale provided by Hodge for the Oliver tractor

and for the Texas Bragg LEO trailer bore substantial similarities to the known handwriting exemplar (State's 6) collected from Hodge by Deputy Stats. While not an absolute identification Barrett reported that a finding of substantial similarities is the second strongest conclusion used in the BCI & I questioned documents section.

{¶23} On December 6, 2018, the Fairfield County grand jury issued a superseding indictment containing charges related to the additional investigation.

{¶24} Specifically, the superseding indictment charged Hodge in Count 1 as having committed the offense of Engaging in a Pattern of Corrupt Activity in violation of R.C. 2923.32(A)(1) & (B)(1) having committed six underlying offenses as a pattern of corrupt activity.

{¶25} In Count 2, the indictment alleged Hodge used a Chevrolet Silverado pickup truck between December 30, 2017 and October 27, 2018 as a criminal tool in violation of R.C. 2923.24 (A) & (C).

{¶26} In Count 3, the Indictment alleged that between January 7, 2018 and January 28, 2018, Hodge committed the offense of Theft in violation of R.C. 2913.02(A)(1) & (B)(2) by taking the property of A.H. and/or R.S.

{¶27} In Count 4, the Indictment alleged that between December 30, 2017 and January 28, 2018, Hodge committed the offense of Theft in violation of R.C. 2913.02(A)(1) & (B) (2) by taking the property of C.D.

{¶28} In Count 5, the Indictment alleged that on January 29, 2018, Hodge committed the offense of Tampering with Evidence in violation of R.C. 2921.12(A) (2) & (B), when he presented law enforcement the falsified bills of sale for stolen property found in his possession.

{¶29} Counts 6, 7 and 8 of the Indictment all alleged conduct related to the original charged crime of February 26, 2018, as alleged that Hodge committed a Breaking and Entering against J.D. in violation of R.C. 2911.13 (A) and/or (B) & (C); that Hodge possessed a criminal tool, to wit: a bolt cutter used in the commission of the B & E on the same date in violation of R.C. 2923.24(A) & (C); and that Hodge had committed the offense of Intimidation of a Public Servant against Deputy Aaron Agosta in violation of R.C. 2921.03(A) & (B) for threats he made against Deputy Agosta after his arrest on February 16, 2018.

{¶30} Count 9 of the Indictment alleged the commission of Grand Theft against T.M., with a specific allegation that Hodge took a camper/trailer belonging to T.M. without his consent in violation of R.C. 2913.02(A)(1) between October 21 and October 27, 2018. Count 9 was amended down from a felony of the fourth degree to a felony of the fifth degree after the trial testimony of T.M.

{¶31} A jury trial took place from June 18 to June 21, 2019. The jury ultimately found Hodge guilty of all counts except the Count 7 charge of Criminal Tools (bolt cutters) related to the February 16, 2018 incident.

{¶32} On July 3, 2019, the trial court sentenced Hodge to an aggregate 14-year stated prison term to run consecutively to a prison term previously imposed in Muskingum County Case Number CR 2019- 0119.

*Assignments of Error*

{¶33} Hodge raises five Assignments of error,

{¶34} "I. HODGE'S CONVICTIONS ARE BASED ON INSUFFICIENT EVIDENCE, IN VIOLATION OF THE DUE PROCESS CLAUSE OF THE FIFTH AND

FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND SECTIONS 10 & 16, ARTICLE I OF THE OHIO CONSTITUTION.

{¶35} "II. HODGE'S CONVICTIONS ARE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE IN VIOLATION OF THE DUE PROCESS CLAUSE OF THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND SECTIONS 10 & 16, ARTICLE I OF THE OHIO CONSTITUTION.

{¶36} "III.  THE TRIAL COURT ERRED BY GIVING A TEMPORAL PROXIMITY INSTRUCTION, IN VIOLATION OF HODGE'S RIGHT AGAINST SELF-INCRIMINATION GUARANTEED UNDER THE FIFTH AMENDMENT TO THE UNITED STATES CONSTITUTION.

{¶37} "IV.  THE TRIAL COURT UNLAWFULLY ORDERED HODGE TO SERVE CONSECUTIVE SENTENCES, IN VIOLATION OF HIS RIGHTS TO DUE PROCESS, GUARANTEED BY SECTION 10, ARTICLE I OF THE OHIO CONSTITUTION AND THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION.

{¶38} "V.  THE TRIAL COURT ERRED BY FAILING TO MERGE HODGE'S THEFT AND BREAKING AND ENTERING CONVICTIONS, AS THEY PERTAIN TO [J.D.'s] PROPERTY, IN VIOLATION OF THE DOUBLE JEOPARDY CLAUSE OF THE FIFTH AMENDMENT TO THE UNITED STATES CONSTITUTION."

I & II.

{¶39}  In his First Assignment of Error, Hodge argues that there was insufficient evidence to convict him.  In his Second Assignment of Error, Hodge contends that the jury's findings are against the manifest weight of the evidence.

**STANDARD OF APPELLATE REVIEW.**

***Sufficiency of the Evidence.***

{¶40}  The Sixth Amendment provides: "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury...."  This right, in conjunction with the Due Process Clause, requires that each of the material elements of a crime be proved to a jury beyond a reasonable doubt.  *Alleyne v. United States*, 570 U.S. __, 133 S.Ct. 2151, 2156, 186 L.Ed.2d 314 (2013); *Hurst v. Florida*, 136 S.Ct. 616, 621, 193 L.Ed.2d 504 (2016).  The test for the sufficiency of the evidence involves a question of law for resolution by the appellate court.  *State v. Walker,* 150 Ohio St.3d 409, 2016-Ohio-8295, 82 N.E.3d 1124, ¶30.  "This naturally entails a review of the elements of the charged offense and a review of the state's evidence."  *State v. Richardson,* 150 Ohio St.3d 554, 2016-Ohio-8448, 84 N.E.3d 993, ¶13.

{¶41}  When reviewing the sufficiency of the evidence, an appellate court does not ask whether the evidence should be believed.  *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus: *Walker,* at ¶30.  "The relevant inquiry is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt."  *Jenks* at paragraph two of the syllabus. *State v. Poutney,* 153 Ohio St.3d 474, 2018-Ohio-22, 97 N.E.3d 478, ¶19.  Thus, "on review for evidentiary sufficiency we do not second-guess the jury's credibility determinations; rather, we ask whether, '*if believed*, [the evidence] would convince the average mind of the defendant's guilt beyond a reasonable doubt.'"  *State v. Murphy*, 91 Ohio St.3d 516, 543, 747 N.E.2d 765 (2001), *quoting Jenks* at paragraph two of the

syllabus (emphasis added); *Walker* at ¶31.  We will not "disturb a verdict on appeal on sufficiency grounds unless 'reasonable minds could not reach the conclusion reached by the trier-of-fact.'"  *State v. Ketterer*, 111 Ohio St.3d 70, 2006-Ohio-5283, 855 N.E.2d 48, ¶ 94, *quoting State v. Dennis*, 79 Ohio St.3d 421, 430, 683 N.E.2d 1096 (1997); *State v. Montgomery*, 148 Ohio St.3d 347, 2016-Ohio-5487, 71 N.E.3d 180, ¶74.

### ISSUES FOR APPEAL

*A. Whether, after viewing the evidence in the light most favorable to the prosecution, the evidence, if believed, would convince the average mind of Hodges' guilt on each element of the crimes for which he was convicted beyond a reasonable doubt.*

{¶42}  For ease of discussion, we shall address the Counts of the Indictment out of order.

<u>1). Count 2 – Possession of Criminal Tools.</u>

{¶43}  Count 2 of the Indictment alleged that Hodge used the Chevrolet Silverado pickup truck to steal property.  The statute proscribing possession of criminal tools, R.C. 2923.24, states in pertinent part,

(A) No person shall possess or have under his control any

substance, device, instrument, or article, with purpose to use it criminally.

{¶44}  Deputy Jeremy Wolverton of the Licking County Sheriff's Office responded along with others to Hodge's residence on Knob Hill around 7:15 a.m. the morning of January 28, 2018.  Upon arrival, Wolverton observed an Oliver tractor sitting on the Texas Bragg LEO trailer in the driveway of the residence.  Alongside was a Chevrolet

Silverado registered to Jessica Eblin bearing plate HHT 2124.  (2T. at 268).  The Silverado contained a red bucket/loader.

{¶45}  On February 16, 2018, when deputies arrived at the property on Snoke Hill in response to a call from J.D., they encounter Hodge and the pickup truck bearing license plate HHT 2124.  The items were identified on the scene by J.D. as having come from inside his pole barn.

{¶46}  On October 27, 2018, Officer Brian Bell in addition to Officer Kurt Torres responded to 152 North Main, Roseville, Ohio regarding a tip on T.M.'s stolen camper. Bell and Torres contacted a male that identified himself as "Joe Archer" and gave a date of birth.  Once it was determined, no "Joe Archer" matching the information existed, the individual gave his social security number, and it came back to Joseph Hodge.  Hodge was present at the property with his girlfriend.  Bell and Torres also observed a camper trailer matching the tip for T.M.'s stolen trailer and a Chevrolet Silverado with lights on top and a toolbox mounted directly behind the cab with no truck bed.  The truck was similar to a truck seen in the surveillance video taken at the scene.

{¶47}  Viewing the evidence in the case at bar in a light most favorable to the prosecution, we conclude that a reasonable person could have found beyond a reasonable doubt that Hodge used the truck criminally to remove the property from the possession of the lawful owner by towing the property or placing the property within the confines of the pickup truck.  An automobile or a truck may be a criminal tool within the meaning of R.C. 2923.24.  *State v. Norman,* 8th Dist. Cuyahoga No. 45785, 1983 WL 4785 at 5 (Sept. 29, 1983); *Accord, City of Ashland v. Francis,* 5th Dist. Ashland No. 17-COA-007, 2017 WL 5256364, ¶24 (Nov. 9, 2017); *State v. Cooper,* 8th Dist. Cuyahoga

No. 104099, 2016-Ohio-8048, ¶28; *State v. Jack,* 11th Dist. Geauga No. 2016-G-0057, 2017-Ohio-9260, ¶22.

{¶48} We hold, therefore, that the state met its burden of production regarding each element of the crime of possession of criminal tools and, accordingly, there was sufficient evidence to submit the charge to the jury and to support Hodges' conviction.

### 2). Counts 3 & 4 – Theft.

{¶49} Count 3 of the Indictment concerned the theft of the Oliver tractor and the red bucket/loader. Count 4 of the Indictment concerned the Texas Bragg LEO trailer with wooden sides.

{¶50} In its simplest form, to constitute a theft offense it need only be proven that some property of value has been taken. R.C. 2913.02 does not require the indictment to allege, or the evidence to establish, any particular value of the property taken. The offense of theft therein defined is complete and the offender becomes guilty of theft without respect to the value of the property or services involved. However, it becomes necessary to prove the value of the property taken, and likewise necessary that the jury find the value and state it in the verdict in order to measure the penalty. "Therefore, in such case, the verdict must find the value to enable the court to administer the appropriate penalty." *State v. Whitten,* 82 Ohio St. 174, 182, 92 N.E.2d 79(1910). C.D. valued his trailer as between $3,500 and $3,600.

{¶51} On January 27, 2018, R.S. reported to the Fairfield County Sheriff's Office that an Oliver tractor had been stolen from a property adjoining his property at 900 Leonard Road, Baltimore, Fairfield County, Ohio. After R.S. had made his police

report on January 27, 2018, the red bucket loader was also taken from the property. R.S. valued the Oliver tractor and bucket as a package to be worth $2,000 to $3,000.

{¶52}  Hodge told the police that he had bought the tractor, bucket loader and the trailer at auction.  The purported documentation that Hodge and his girlfriend Jessica Eblin provided had several items missing, including the seller's name.  3T. at 511-515. The Bureau of Motor Vehicles Power of Attorney the couple provided was blank of most of the important information.  3T. at 515.

{¶53}  Viewing the evidence in the case at bar in a light most favorable to the prosecution, we conclude that a reasonable person could have found beyond a reasonable doubt that Hodge had committed the crime of Theft as alleged in Count 3 and Count 4 of the Indictment.  We hold, therefore, that the state met its burden of production regarding each element of the crime of theft as alleged in Count 3 and Count 4 of the Indictment and, accordingly, there was sufficient evidence to submit the charges to the jury and to support Hodges' convictions.

3). Count 5- Tampering with Evidence.

{¶54}  Count 5 of the Indictment alleged that on January 29, 2018, Hodge committed the offense of Tampering with Evidence in violation of R.C. 2921.12(A)(2) & (B), when he presented law enforcement officers with falsified bills of sale for stolen property found in his possession.

{¶55}  Pursuant to R.C. 2921.12(A)(2), "No person, knowing that an official proceeding or investigation is in progress, or is about to be or likely to be instituted, shall do any of the following: ...  (2) Make, present, or use any record, document, or thing, knowing it to be false and with purpose to mislead a public official who is or may be

engaged in such proceeding or investigation, or with purpose to corrupt the outcome of any such proceeding or investigation."

{¶56}  Hodge told the police that he had bought the tractor, bucket loader and the trailer at auction.  The purported documentation that Hodge and his girlfriend Jessica Eblin provided had several items missing, including the seller's name.  3T. at 511-515. The Bureau of Motor Vehicles Power of Attorney the couple provided was blank of most of the important information.  3T. at 515.

{¶57}  Forensic scientist Rebecca Barrett of the Ohio Bureau of Criminal Investigation testified during Hodge's jury trial that the handwritten portions of the two bills of sale provided by Hodge for the Oliver tractor and for the Texas Bragg LEO trailer bore substantial similarities to the known handwriting exemplar (State's 6) collected from Hodge by Deputy Stats. While not an absolute identification Barrett reported that a finding of substantial similarities is the second strongest conclusion used in the BCI & I questioned documents section.

{¶58}  Viewing the evidence in the case at bar in a light most favorable to the prosecution, we conclude that a reasonable person could have found beyond a reasonable doubt that Hodge had committed the crime of Tampering with Evidence as alleged in Count 5 of the Indictment.  We hold, therefore, that the state met its burden of production regarding each element of the crime of tampering with evidence as alleged in Count 5 of the Indictment and, accordingly, there was sufficient evidence to submit the charge to the jury and to support Hodges' conviction.

4). Count 6 – Breaking and Entering.

{¶59} Count 6 of the Indictment alleged conduct related to the original charged crime of February 26, 2018, and alleged that Hodge committed a Breaking and Entering against J.D.'s property on Snoke Hill Road, Lancaster, Ohio in violation of R.C. 2911.13 (A) and/or (B) & (C).

{¶60} To find Hodge guilty of breaking and entering the jury would have to find beyond a reasonable doubt that Hodge by force, stealth, or deception trespassed in an unoccupied structure, with purpose to commit therein any theft offense, as defined in section 2913.01 of the Revised Code, or any felony. R.C. 2911.13(A).

{¶61} On February 16, 2018, when deputies arrived at the Snoke Hill Road property in response to a call from J.D., they encounter Hodge and the pickup truck bearing license plate HHT 2124. In addition to a cabin the property included several pole buildings for storage. The lane to the buildings was gated and the sliding door on the storage building was secured by a lock. On February 14, 2018, J.D. noticed heavy truck track marks/ruts on his lane into the property. The gate inside had been moved to allow entry and several trees/limbs had been cut or cleared from the lane. On February 16, 2018, J.D. noticed that Hodge's truck and trailer contained property that had been secured inside the pole barn.

{¶62} Viewing the evidence in the case at bar in a light most favorable to the prosecution, we conclude that a reasonable person could have found beyond a reasonable doubt that Hodge had committed the crime of Breaking and Entering with respect to the pole buildings on the Snoke Hill Road property of J.D. as alleged in Count 6 of the Indictment. We hold, therefore, that the state met its burden of production regarding each element of the crime of breaking and entering as alleged in

Count 6 of the Indictment and, accordingly, there was sufficient evidence to submit the charge to the jury and to support Hodge's conviction.

      <u>5). Count 8 – Intimidation of a Public Official.</u>

**{¶63}** Count 8 of the Indictment alleges that Hodge committed the offense of Intimidation of a Public Servant against Deputy Aaron Agosta in violation of R.C. 2921.03(A) & (B) for threats he made against Deputy Agosta after his arrest on February 16, 2018.

**{¶64}** R.C. 2921.03 provides,

      (A) No person, knowingly and by force, by unlawful threat of harm to any person or property, or by filing, recording, or otherwise using a materially false or fraudulent writing with malicious purpose, in bad faith, or in a wanton or reckless manner, *shall attempt to influence, intimidate, or hinder a public servant, party official, or witness in the discharge of the person's duty.* (Emphasis added).

**{¶65}** "A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist." R.C. 2901.22(B).

**{¶66}** In *State v. Cress*, 112 Ohio St.3d 72, 2006-Ohio- 6501, 858 N.E.2d 341, the Ohio Supreme Court held,

      We hold, rather, that the statutory language in R.C. 2921.04(B), proscribing intimidation by an "unlawful threat of harm," is satisfied only when the very making of the threat is itself unlawful because it violates

established criminal or civil law. For example, where the making of a threat constitutes the offense of coercion, in violation of R.C. 2905.12, [footnote omitted] a misdemeanor, that offense would serve as a predicate offense for the crime of witness intimidation as proscribed by R.C. 2921.04(B), a felony.

{¶67} In *Cress* the Ohio Supreme Court constructed a previous version of R.C. 2921.03[2] that provided,

> R.C. 2921.04 provides:
>
> (A) No person shall knowingly attempt to intimidate or hinder the victim of a crime in the filing or prosecution of criminal charges or a witness involved in a criminal action or proceeding in the discharge of the duties of the witness.
>
> (B) No person, knowingly *and by force or by unlawful threat of harm* to any person or property, shall attempt to influence, intimidate, or hinder the victim of a crime in the filing or prosecution of criminal charges or an attorney or witness involved in a criminal action or proceeding in the discharge of the duties of the attorney or witness. (Emphasis added).

*Cress,* 112 Ohio St.3d 72, 2006-Ohio-6501, 858 N.E.2d 341, ¶ 32-33.

{¶68} In State *v. Yambrisak*, 5th Dist. Richland No. 2012CA50, 2013-Ohio-1406, this Court held,

> Both intimidation and retaliation require that the state prove beyond a reasonable doubt an "unlawful threat of harm." The Supreme Court of

---

[2] The prior version of the Intimidation statute under consideration in *Kress* was numbered R.C.2921.04; the present version of the Intimidation statute under which Hodge was indicted is R.C. 2921.03.

Ohio suggested that, to be unlawful, the threat itself must violate a predicate offense. *State v. Cress*, 112 Ohio St.3d 72, 858 N.E.2d 341, 2006–Ohio–6501, ¶ 43.(Construing the "unlawful threat of harm" element of R.C. 2912.04(B), attempt to intimidate victim, witness or attorney for being a witness) The court held "that the statutory language in R.C. 2921.04(B), proscribing intimidation by an 'unlawful threat of harm,' is satisfied only when the very making of the threat is itself unlawful because it violates established criminal or civil law." Id. At ¶ 42, 858 N.E.2d 341. The court held that the threat itself, not the threatened conduct, must be unlawful. Id. at ¶ 38, 858 N.E.2d 341. As the "threat of harm" language of R.C. 2921.03 is identical to the language construed by the Court in *Kress*, we find the Supreme Court's analysis to be persuasive in a case involving intimidation under R.C. 2921.03(A).

*Accord, State v. Khaliq,* 5th Dist. Licking No. 15-CA-64, 2016-Ohio-7859, ¶ 27.

{¶69} In this case, the evidence of an alleged unlawful threat of harm are the following statements made by Hodge,

> While in the car he did not say a single thing to me. When we got to the jail, that's when he started becoming belligerent towards me, called me several names, a pussy, a bitch, told me that I hid behind my badge and told me wait till he catches me on the streets.
>
> And he also made a comment -- we were still wearing the memorial badge for the Westerville officers that had been slain. It was just after that

had taken place and he made a comment that it's because officers like me that I was wearing that on my badge.

***

Q. Is that something that you consider -- let me ask you this. Is taking statements from a Defendant like that something that's part of your job? Is it part of your role to take that kind of abuse?

A. I mean it is what it is. I've got thick skin. I'm not -- I mean every threat should be taken seriously, but it's nothing that I haven't heard before.

* * *

Q. When he was making these statements to you, calling your name -- calling you names, making these statements, did he ask you to do anything?

A. Not that I recall.

Q. Did he ask you not to do anything?

A. Not that I recall.

Q. Were they conditional threats? For example, if you don't let me go, I'm going to do this. Were they conditioned on you doing anything that you would not normally do in your duties?

A. No, it was just, you know, wait till I catch you on the streets type stuff.

Q. And he was angry when you said that?

A. Very.

Q.  So you didn't change anything you were doing because he said these things to you?

A.  No.

2T. at 339-341; 344-345.

{¶70}  The language used by Hodge and directed at Deputy Agosta was not simply vile and obscene it was directed at the officer personally.

{¶71}  R.C. 2903.02, Menacing, provides,

(A) No person shall knowingly cause another to believe that the offender will cause physical harm to the person or property of the other person, the other person's unborn, or a member of the other person's immediate family.  In addition to any other basis for the other person's belief that the offender will cause physical harm to the person or property of the other person, the other person's unborn, or a member of the other person's immediate family, the other person's belief may be based on words or conduct of the offender that are directed at or identify a corporation, association, or other organization that employs the other person or to which the other person belongs.

{¶72}  Hodge's statement that Deputy Agosta should wait until Hodge catches him on the street could reasonably be construed as causing the deputy to believe that Hodge will cause him physical harm when he is released.  Thus, the very making of the threat is itself unlawful because it violates established criminal or civil law, i.e. R.C. 2903.02, Menacing.

{¶73} However, this does not end our analysis. R.C. 2921.03 also requires that the unlawful threat of harm "*shall attempt to influence, intimidate, or hinder a public servant, party official, or witness in the discharge of the person's duty.* "Intimidation" by definition involves the creation of fear in a victim, and the very nature of a threat is the creation of fear of negative consequences for the purpose of influencing behavior." *Cress* at ¶ 40.

{¶74} It seems rather clear if the unlawful threat was not made to *attempt to influence, intimidate, or hinder a public servant, party official, or witness in the discharge of the person's duty*, then Hodge's statements to Deputy Agosta would be actionable under the menacing[3] or aggravated menacing[4] statues, not under R.C. 2921.03.

{¶75} In the case at bar there is no evidence that Hodge intended his threat to discourage Deputy Agosta from filing criminal charges or not testifying at Hodge's subsequent jury trial. There is no evidence that Deputy Agosta was, in fact, influenced, intimidated, or hindered in the performance of his duties as a result of Hodge's threats.

{¶76} Additionally, Hodge's remarks were not made conditional upon Deputy Agosta's taking or not taking any action,[5]

> We also note that Bowshier's threats appear to have been made unconditionally. That is, there is nothing in his remarks that we can find to have suggested, either expressly or by implication, that Bowshier would physically harm Bower unless Bower either let him go or went easy on him. An attempt to influence, intimidate or hinder Bower would involve a quid pro quo: let me go or I will hurt you.

---

[3] R.C. 2923.02
[4] R.C. 2923.01
[5] 2T. at 344-345.

*State v. Bowshier,* 167 Ohio App.3d 87, 2006-Ohio-2822, 853 N.E. 2d 1210, ¶68. Deputy Agosta noted that Hodge was arrested in part because he was angry, upset, and verbally abusive toward J.D. at the scene. 2T. at 339; 345. It was only after Hodge arrived at the jail that he became abusive toward Deputy Agosta. 2T. at 339-340.

{¶77} However, such threats should not be countenanced and they can do real harm to the administration of justice. *See, State v. Malone,* 121 Ohio St.3d 244, 2009-Ohio-310, 903 N.E. 2d 614, ¶27. As we have noted, the threat that occurred in this case could fall under Ohio's menacing or aggravated menacing statutes. Cf. *Malone,* ¶ 27. Hodge, however, was charged under R.C. 2921.03.

{¶78} We hold, therefore, that where the evidence fails to prove that the threat was made to *attempt to influence, intimidate, or hinder a public servant, party official, or witness in the discharge of the person's duty* the evidence is insufficient to support a conviction under R.C. 2921.03.

### 6). Count 9 – Grand Theft.

{¶79} Count 9 of the Indictment alleged the commission of Grand Theft against T.M., with a specific allegation that Hodge took a camper/trailer belonging to T.M. without his consent in violation of R.C. 2913.02(A)(1) between October 21 and October 27, 2018. Count 9 was amended down from a felony of the fourth degree to a felony of the fifth degree after the trial testimony of T.M.

{¶80} Detective Kyle Mears of the Lancaster Police Department was charged with doing a follow up investigation on T.M.'s trailer theft. Mears recovered several video clips from a business known as Mr. Froggy's located very near Eastside Storage. At approximately 4:00 a.m. the day after T.M. dropped-off the trailer, Deputy Mears

testified that he could make out a truck similar to a Chevrolet Silverado with lights across the cab top and a toolbox mounted behind the cab and no truck bed back under and pull away with T.M.'s trailer. The video did not show the driver or a license number of the truck. The video was dark and difficult to make out.

{¶81} On October 27, 2018, Officer Brian Bell and Officer Kurt Torres responded to 152 North Main, Roseville, Ohio regarding a tip on T.M.'s stolen camper. Officers Bell and Torres contacted a male that identified himself as "Joe Archer" and gave a date of birth. Once it was determined no "Joe Archer" matching the information existed the individual gave his social security number and it came back to Hodge. Hodge was present at the property with his girlfriend, Jessica Eblin. Officers Bell and Torres also observed a camper trailer matching the tip for T.M.'s stolen trailer and a Chevrolet Silverado with lights on top and a toolbox mounted directly behind the cab with no truck bed. Hodge reported his friend, "Adam West", had allowed him to borrow the Sunnybrook camper and he had picked it up in Zanesville. Officer Bell confirmed the trailer was T.M.'s by comparing the serial number.

{¶82} Viewing the evidence in the case at bar in a light most favorable to the prosecution, we conclude that a reasonable person could have found beyond a reasonable doubt that Hodge had committed the crime of Grand Theft with respect to the Sunnybrook camper as alleged in Count 9 of the Indictment. We hold, therefore, that the state met its burden of production regarding each element of the crime of grand theft as alleged in Count 9 of the Indictment and, accordingly, there was sufficient evidence to submit the charge to the jury and to support Hodg's conviction.

<u>7). Count 1 - Engaging in a Pattern of Corrupt Activity.</u>

{¶83} R.C. 2923.32(A) (1), provides "No person employed by, or associated with, any enterprise shall conduct or participate in, directly or indirectly, the affairs of the enterprise through a pattern of corrupt activity or the collection of an unlawful debt." "Enterprise" is defined as including,

> Any individual, sole proprietorship, partnership, limited partnership, corporation, trust, union, government agency, or other legal entity, or any organization, association, or group of persons associated in fact although not a legal entity. "Enterprise" includes illicit as well as licit enterprises.

R.C. 2923.31(C). As the Ohio Supreme Court has observed,

> A RICO offense is dependent upon a defendant committing two or more predicate offenses listed in R.C. 2923.31(I). However, a RICO offense also requires a defendant to be "employed by, or associated with" an "enterprise" and to "conduct or participate in" an "enterprise through a pattern of corrupt activity." R.C. 2923.32(A)(1). "Such pattern must include both a relationship and continuous activity, as well as proof of the existence of an enterprise. Thus, the conduct required to commit a RICO violation is independent of the conduct required to commit [the underlying predicate offenses]." *State v. Dudas*, 11th Dist. Lake Nos. 2008–L–109 and 2008–L–110, 2009-Ohio-1001, ¶ 46. * * * The intent of RICO is "'to criminalize the pattern of criminal activity, not the underlying predicate acts.'" *State v. Thomas*, 3d Dist. Allen Nos. 1–11–25 and 1–11–26, 2012-Ohio-5577, ¶ 61, *quoting State v. Dodson*, 12th Dist. Butler No. 2009–07–1147, 2011-Ohio-6222, ¶ 68.

*State v. Miranda*, 138 Ohio St.3d 184, 2014-Ohio-451, 5 N.E.3d 603, ¶ 13.    The Supreme Court of Ohio has emphasized, "merely committing successive or related crimes is not sufficient to" prove there was a pattern of corrupt activity.    *State v. Schlosser*, 79 Ohio St.3d 329, 333, 681 N.E.2d 911 (1997).

{¶84} In the case at bar, the Indictment lists the predicate offenses as Possession of Criminal Tools [R.C. 2923.24] [Count2][6]; Theft [2913.02] [Counts 3 and 4]; Tampering with Evidence [R.C. 2921.12] [Count 5]; Breaking and Entering [R.C. 2911.13] [Count 6]; Intimidation of a Public Servant [R.C. 2921.04(B)(1)] [Count 8]; and Grand Theft [R.C. 2913.02] [Count 9].

{¶85} In the case at bar, Hodge argues the evidence is insufficient to show he "engaged in a pattern of criminal activity."    More specifically, Hodge contends that the evidence adduced at trial failed to show that he and Jessica Eblin were involved in a criminal enterprise.

{¶86} Pursuant to  R.C. 2923.31(E), "'[p]attern of corrupt activity' means two or more incidents of corrupt activity * * * that are related to the affairs of the same enterprise, are not isolated, and are not so closely related to each other and connected in time and place that they constitute a single event."

{¶87} R.C. 2923.32 requires that the defendant be "associated" with an "enterprise."    R.C. 2923.32(A)(1);   *State v. Sparks*, 12th Dist., 2014-Ohio-1130, 10 N.E.3d 755, ¶ 19, *citing State v. Campbell*, 5th Dist. No. 07-CA-A-08-0041, 2008-Ohio-2143, ¶23. Under R.C. 2923.31(C), "'[e]nterprise' includes any individual, sole proprietorship, partnership, limited partnership, corporation, trust, union, government

---

[6] We can find no reference to R.C. 2923.24, Possession of Criminal Tools within the Corrupt Activity statute, R.C. 2923(I)(2)(a) or (c).

agency, or other legal entity, or any organization, association, or group of persons associated in fact although not a legal entity." The state has "to prove that each defendant was voluntarily connected to the pattern [of corrupt activity comprising the enterprise], and performed two or more acts in furtherance of it." *State v. Sieferd*, 151 Ohio App.3d 103, 783 N.E.2d 591, 2002-Ohio-6801, ¶ 43, *quoting State v. Schlosser*, 79 Ohio St.3d 329, 334, 681 N.E.2d 911 (1997).

{¶88} In *State v. Groce,* the 10th District Court of Appeals observed,

In *Boyle v. United States*, 556 U.S. 938, 129 S.Ct. 2237, 173 L.Ed.2d 1265 (2009), the United States Supreme Court set forth a test for determining when there is an association-in-fact enterprise. Appellate courts of this state have concluded the *Boyle* test applies to the definition of enterprise utilized in R.C. 2923.31(C). *See State v. Dodson*, 12th Dist. No. CA2010-08-191, 2011-Ohio-6222, 2011 WL 6017950, ¶ 20; *State v. Yavorcik*, 8th Dist., 2018-Ohio-1824, 113 N.E.3d 100, ¶ 80; *State v. Christian*, 2d Dist. No. 25256, 2016-Ohio-516, 56 N.E.3d 391, ¶ 26; *State v. Kozic,* 7th Dist. No. 11 MA 135, 2014-Ohio-3807, 2014 WL 4347618, ¶ 105-07; *State v. Birdsong*, 11th Dist. No. 2013-L-003, 2014-Ohio-1353, 2014 WL 1348846, ¶ 46. Under the *Boyle* test, "an association-in-fact enterprise must have at least three structural features: a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose." *Boyle* at 946, 129 S.Ct. 2237.

10th Dist. Franklin No. 18AP-51, 2019-Ohio-007, ¶ 21. "The existence of an enterprise, sufficient to sustain a conviction for engaging in a pattern of corrupt activity under R.C. 2923.32(A)(1), can be established without proving that the enterprise is a structure separate and distinct from a pattern of corrupt activity." *State v. Beverly,* 143 Ohio St.3d 258, 2015-Ohio-219, 37 N.E.3d 116, syllabus.

{¶89} In the case at bar, the "purpose" of the criminal enterprise was to remove property that had been left unattended. Hodge used Eblin's truck to remove the items and her home to store at least the Texas Bragg LEO trailer, bucket/loader and Oliver tractor.

{¶90} An "association-in-fact enterprise is a 'group of persons associated together for a common purpose of engaging in a course of conduct.'" *Boyle v. United States*, 556 U.S. 938, 946, 129 S.Ct. 2237 (2009), *quoting United States v. Turkette*, 452 U.S. 576, 583, 101 S.Ct. 2524 (1981). In the case at bar, Hodge and Jessica Eblin had a relationship to the enterprise and each other. The parties lived together at the home owned by Eblin. Hodge was known to drive the truck registered to Eblin. Hodge informed Deputy Stats he was not good with computers but would have his girlfriend, Jessica Eblin, email copies of the bills of sale for the Oliver tractor and Texas Bragg LEO trailer to the Deputy. Deputy Stats later received purported bills of sale from Jessica Eblin by email. Hodge later hand delivered copies of the same bills of sale to Deputy Stats when she met him to collect a handwriting exemplar. Hodge's girlfriend, Jessica Eblin, was present when Hodge gave the initial false identity and when he stated he got the Sunnybrook camper from "Adam West". Both Hodge and his girlfriend had to remove personal property from inside the Sunnybrook camper prior to police

impounding the camper. The enterprise operated from on or about December 30, 2017 to on or about October 22, 2018. Eblin participated in the deception by emailing documents that were altered to attempt to show Hodge had purchased the stolen property and in standing by while Hodge attempted to deceive the police about his identity. Further, it was Eblin's truck that Hodge used to remove the property from where it had been located and Eblin's home where several of the items were recovered.

{¶91} Accordingly, in the case at bar, the pattern of corrupt activity under R.C. 2923.32(A)(1) included both a relationship and continuous activity, as well as proof of the existence of an enterprise.

{¶92} Viewing the evidence in the case at bar in a light most favorable to the prosecution, we conclude that a reasonable person could have found beyond a reasonable doubt that Hodge had committed the crime of Engaging in a Pattern of Corrupt Activity as alleged in Count 1 of the Indictment. We hold, therefore, that the state met its burden of production regarding each element of the crime of engaging in a pattern of corrupt activity as alleged in Count 1 of the Indictment and, accordingly, there was sufficient evidence to submit the charge to the jury and to support Hodges' conviction.

**Manifest Weight of the Evidence.**

{¶93} In his Second Assignment of Error, Hodge contends that his convictions are against the manifest weight of the evidence.

{¶94} As to the weight of the evidence, the issue is whether the jury created a manifest miscarriage of justice in resolving conflicting evidence, even though the evidence of guilt was legally sufficient. *State v. Thompkins*, 78 Ohio St.3d 380, 386–

387, 678 N.E.2d 541 (1997), *superseded by constitutional amendment on other grounds as stated by State v. Smith,* 80 Ohio St.3d 89, 684 N.E.2d 668, 1997–Ohio–355; *State v. Issa*, 93 Ohio St.3d 49, 67, 752 N.E.2d 904 (2001).

> "[I]n determining whether the judgment below is manifestly against the weight of the evidence, every reasonable intendment and every reasonable presumption must be made in favor of the judgment and the finding of facts.

> \* \* \*

> "If the evidence is susceptible of more than one construction, the reviewing court is bound to give it that interpretation which is consistent with the verdict and judgment, most favorable to sustaining the verdict and judgment."

*Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984), fn. 3, *quoting* 5 Ohio Jurisprudence 3d, Appellate Review, Section 60, at 191–192 (1978).

{¶95} The reviewing court must bear in mind, however, that credibility generally is an issue for the trier of fact to resolve. *State v. Issa*, 93 Ohio St.3d 49, 67, 752 N.E.2d 904 (2001); *State v. Murphy*, 4th Dist. Ross No. 07CA2953, 2008–Ohio–1744, ¶ 31. Because the trier of fact sees and hears the witnesses and is particularly competent to decide whether, and to what extent, to credit the testimony of particular witnesses, the appellate court must afford substantial deference to its determinations of credibility. *Barberton v. Jenney*, 126 Ohio St.3d 5, 2010–Ohio–2420, 929 N.E.2d 1047, ¶ 20. In other words, "[w]hen there exist two fairly reasonable views of the evidence or two conflicting versions of events, neither of which is unbelievable, it is not our province to

choose which one we believe." *State v. Dyke*, 7th Dist. Mahoning No. 99 CA 149, 2002–Ohio–1152, at ¶ 13, citing *State v. Gore*, 131 Ohio App.3d 197, 201, 722 N.E.2d 125(7th Dist. 1999). Thus, an appellate court will leave the issues of weight and credibility of the evidence to the fact finder, as long as a rational basis exists in the record for its decision. *State v. Picklesimer,* 4th Dist. Pickaway No. 11CA9, 2012–Ohio–1282, ¶ 24.

{¶96} Once the reviewing court finishes its examination, an appellate court may not merely substitute its view for that of the jury, but must find that " 'the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *State v. Thompkins, supra*, 78 Ohio St.3d at 387, *quoting State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717, 720–721(1st Dist. 1983). Accordingly, reversal on manifest weight grounds is reserved for "the exceptional case in which the evidence weighs heavily against the conviction." Id.

**ISSUE FOR APPEAL.**

*B. Whether the trial court clearly lost their way and created such a manifest miscarriage of justice that the convictions must be reversed and a new trial ordered.*

{¶97} The jury as the trier of fact was free to accept or reject any and all of the evidence offered by the parties and assess the witness's credibility. "While the trier of fact may take note of the inconsistencies and resolve or discount them accordingly * * * such inconsistencies do not render defendant's conviction against the manifest weight or sufficiency of the evidence." *State v. Craig,* 10th Dist. Franklin No. 99AP–739, 1999 WL 29752 (Mar 23, 2000) *citing State v. Nivens*, 10th Dist. Franklin No. 95APA09–1236, 1996 WL 284714 (May 28, 1996). Indeed, the trier of fact need not believe all of

a witness' testimony, but may accept only portions of it as true. *State v. Raver*, 10th Dist. Franklin No. 02AP–604, 2003–Ohio–958, ¶ 21, *citing State v. Antill*, 176 Ohio St. 61, 67, 197 N.E.2d 548 (1964); *State v. Burke*, 10th Dist. Franklin No. 02AP–1238, 2003–Ohio–2889, *citing State v. Caldwell*, 79 Ohio App.3d 667, 607 N.E.2d 1096 (4th Dist. 1992). Although the evidence may have been circumstantial, we note that circumstantial evidence has the same probative value as direct evidence. *State v. Jenks*, 61 Ohio St.3d 259, 272, 574 N.E.2d 492 (1991), paragraph one of the syllabus, *superseded by State constitutional amendment on other grounds as stated in State v. Smith*, 80 Ohio St.3d 89, 102 at n.4, 684 N.E.2d 668 (1997).

{¶98} In the case at bar, the jury heard the witnesses and viewed the evidence. In addition, the jury heard Hodge's attorney's arguments and explanations about Hodge's actions. Thus, a rational basis exists in the record for the jury's decision.

{¶99} We find that this is not an "'exceptional case in which the evidence weighs heavily against the conviction.'" *State v. Thompkins*, 78 Ohio St.3d 380, 386–387, 678 N.E.2d 541 (1997), *quoting Martin*, 20 Ohio App.3d at 175, 485 N.E.2d 717. Based upon the foregoing and the entire record in this matter we find Hodge's conviction is not against the sufficiency or the manifest weight of the evidence. To the contrary, the jury appears to have fairly and impartially decided the matters before them. The jury heard the witnesses, evaluated the evidence, and was convinced of Hodge's guilt. The jury neither lost their way nor created a miscarriage of justice in convicting Hodge of the offenses.

{¶100} Finally, upon careful consideration of the record in its entirety, we find that there is substantial evidence presented which if believed, proves all the elements of the crimes[7] for which Hodge was convicted.

**CONCLUSION.**

{¶101} Hodge's First Assignment of Error is affirmed, in part and overruled in part. Hodge's Second Assignment of Error is overruled.

{¶102} Pursuant to Section 3(B) (2), Article IV of the Ohio Constitution the conviction and sentence for Count 8 of the Indictment, Intimidation **are vacated**.  This decision in no way affects the verdicts issued by the jury on any other count.  It only affects the jury's finding of Guilt and the court's sentence upon Count 8 of the Indictment, Intimidation.

III.

{¶103} In his Third Assignment of Error, Hodge argues that the trial court violated his Fifth Amendment right against self-incrimination by giving the jury a temporal proximity instruction with respect to Count 3 of the Indictment, Theft [3T. at 613] and Count 9 of the Indictment Grand Theft [3T. at 633].

**STANDARD OF APPELLATE REVIEW.**

{¶104} The giving of jury instructions is within the sound discretion of the trial court and will not be disturbed on appeal absent an abuse of discretion.  *State v. Martens*, 90 Ohio App.3d 338, 629 N.E.2d 462 (3rd Dist. 1993).  In order to find an abuse of that discretion, we must determine the trial court's decision was unreasonable, arbitrary, or unconscionable and not merely an error of law or judgment.  *Blakemore v.*

---

[7] With the exception of Intimidation as alleged in Count 8 of the Indictment.

*Blakemore*, 5 Ohio St.3d 217, 450 N.E.2d 1140(1983). Jury instructions must be reviewed as a whole. *State v. Coleman*, 37 Ohio St.3d 286, 525 N.E.2d 792(1988).

{¶105} Crim.R. 30(A) governs instructions and states as follows:

At the close of the evidence or at such earlier time during the trial as the court reasonably directs, any party may file written requests that the court instruct the jury on the law as set forth in the requests. Copies shall be furnished to all other parties at the time of making the requests. The court shall inform counsel of its proposed action on the requests prior to counsel's arguments to the jury and shall give the jury complete instructions after the arguments are completed. The court also may give some or all of its instructions to the jury prior to counsel's arguments. The court need not reduce its instructions to writing.

On appeal, a party may not assign as error the giving or the failure to give any instructions unless the party objects before the jury retires to consider its verdict, stating specifically the matter objected to and the grounds of the objection. Opportunity shall be given to make the objection out of the hearing of the jury.

{¶106} Counsel for Hodge objected to the trial court's temporal proximity instruction before the instruction was read to the jury. 3T. at 435-443.

**ISSUES FOR APPEAL.**

*Did the trial court abuse its discretion in giving a temporal proximity instruction with respect to the theft counts against Hodge? Did the temporal proximity instruction violate Hodge's right to self-incrimination?*

{¶107} In the case at bar, the trial court instructed the jury as follows,

Close Temporal Proximity. You, the jury may infer, beyond a reasonable doubt, that a defendant committed theft where there is both a close temporal proximity between the commission of the crime and the defendant's possession of the stolen items and the defendant fails to provide a credible explanation to his possession of the stolen items, if one is given, or other circumstances of guilt exist.

3T at 613.

{¶108} Hodge argues that under the instruction, he is required to give a "credible explanation" of his possession of the property and if he does not, the jury can infer his guilt. He claims that the instructions violates his privilege against self-incrimination, and in essence predicates guilt upon his silence.

{¶109} The United States Supreme Court has rejected Hodge's argument. In *Barnes v. United States,* the United States Supreme Court reviewed a jury instruction that is similar to the one Hodge objects to in this case in order to determine if such an instruction comports with due process,

(p)ossession of recently stolen property, if not satisfactorily explained, is ordinarily a circumstance from which you may reasonably draw the inference and find, in the light of the surrounding circumstances shown by the evidence in the case, that the person in possession knew the property had been stolen.

412 U.S. 837, 839, 93 S.Ct. 2357, 37 L.Ed.2d 380(1973) (footnotes omitted). The Court observed,

In the present case we deal with a traditional common-law inference deeply rooted in our law.  For centuries courts have instructed juries that an inference of guilty knowledge may be drawn from the fact of unexplained possession of stolen goods.  James Thayer, writing in his Preliminary Treatise on Evidence (1898), cited this inference as the descendant of a presumption 'running through a dozen centuries.'  Id., at 327.  Early American cases consistently upheld instructions permitting conviction upon such an inference, and the courts of appeals on numerous occasions have approved instructions essentially identical to the instruction given in this case.  This longstanding and consistent judicial approval of the instruction, reflecting accumulated common experience, provides strong indication that the instruction comports with due process.

412 U.S. 837, 843-844, 93 S.Ct. 2357, 37 L.Ed.2d 380(1973) (footnotes omitted).  The *Barnes* Court specifically rejected Hodge's argument that the instructions violates the privilege against self-incrimination,

Petitioner also argues that the permissive inference in question infringes his privilege against self-incrimination.  The Court has twice rejected this argument,  *Turner v. United States, supra*, 396 U.S., at 417— 418, 90 S.Ct., at 652; *Yee Hem v. United States*, 268 U.S. 178, 185, 45 S.Ct. 470, 472, 69 L.Ed. 904 (1925), and we find no reason to re-examine the issue at length.  The trial court specifically instructed the jury that petitioner had a constitutional right not to take the witness stand and that possession could be satisfactorily explained by evidence independent of

petitioner's testimony. Introduction of any evidence, direct or circumstantial, tending to implicate the defendant in the alleged crime increases the pressure on him to testify. The mere massing of evidence against a defendant cannot be regarded as a violation of his privilege against self-incrimination. *Yee Hem v. United States, supra*, 268 U.S., at 185, 45 S.Ct., at 472.

412 U.S. 837, 846-847, 93 S.Ct. 2357, 37 L.Ed.2d 380(1973) (footnotes omitted). The Ohio Supreme Court has arrived at the same conclusion. *State v. Arthur,* 42 Ohio St.2d 67, 69,325 N.E.2d 888(1975).

{¶110} In the case at bar, the trial court instructed the jury concerning "reasonable doubt." 3T. at 604. The trial court instructed the jury that Hodge had a constitutional right not to take the witness stand and no negative inference could be drawn by his failure to do so. 3T. at 605-606. Hodge does not argue that either of these instructions was in error or improperly given by the trial court.

{¶111} The trial court did not abuse its discretion in giving the jury the temporal proximity instruction because the instruction did not violate Hodge's right to be free from self-incrimination.

{¶112} Hodge's Third Assignment of Error is overruled.

IV.

{¶113} In his Fourth Assignment of Error, Hodge contends that the trial court improperly imposed consecutive sentences.

**STANDARD OF APPELLATE REVIEW.**

{¶114} We review felony sentences using the standard of review set forth in R.C. 2953.08. *State v. Marcum*, 146 Ohio St.3d 516, 2016–Ohio–1002, 59 N.E.3d 1231, ¶ 22*; State v. Howell,* 5th Dist. Stark No. 2015CA00004, 2015-Ohio-4049, ¶ 31.

{¶115} In *State v. Gwynne,* a plurality of the Supreme Court of Ohio held that an appellate court may only review individual felony sentences under R.C. 2929.11 and R.C. 2929.12, while  R.C. 2953.08(G)(2) is the exclusive means of appellate review of consecutive felony sentences.  ___ Ohio St.3d ___, 2019-Ohio-4761, ¶16-18; *State v. Anthony,* 11th Dist. Lake No. 2019-L-045, 2019-Ohio-5410, ¶60.

{¶116} R.C. 2953.08(G)(2) provides we may either increase, reduce, modify, or vacate a sentence and remand for resentencing where we clearly and convincingly find that either the record does not support the sentencing court's findings under  R.C. 2929.13(B) or  (D),  2929.14(B)(2)(e) or  (C)(4), or  2929.20(I), or the sentence is otherwise contrary to law.  *See, also, State v. Bonnell*, 140 Ohio St.3d 209, 2014–Ohio–3177, 16 N.E.2d 659, ¶ 28; *State v. Gwynne,* ¶16.

{¶117} Clear and convincing evidence is that evidence "which will provide in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established."  *Cross v. Ledford,* 161 Ohio St. 469, 120 N.E.2d 118(1954), paragraph three of the syllabus.  *See* also, *In re Adoption of Holcomb*, 18 Ohio St.3d 361 (1985). "Where the degree of proof required to sustain an issue must be clear and convincing, a reviewing court will examine the record to determine whether the trier of facts had sufficient evidence before it to satisfy the requisite degree of proof."  *Cross,* 161 Ohio St. at 477 120 N.E.2d 118.

**{¶118}** In the case at bar, Hodge does not contest the length of any of his individual sentences; rather his arguments center upon the trial court's decision to make his sentences consecutive to the prison sentence that Hodge had received in Muskingum County Case No. CR2019-119[8].  [Appellant's Brief at 10].  As the Ohio Supreme Court noted in *Gwynne*,

> Because  R.C. 2953.08(G)(2)(a) specifically mentions a sentencing judge's findings made under  R.C. 2929.14(C)(4) as falling within a court of appeals' review, the General Assembly plainly intended  R.C. 2953.08(G)(2)(a) to be the exclusive means of appellate review of consecutive sentences.  *See State v. Vanzandt*, 142 Ohio St.3d 223, 2015-Ohio-236, 28 N.E.3d 1267, ¶ 7 ("We primarily seek to determine legislative intent from the plain language of a statute").
>
> While  R.C. 2953.08(G)(2)(a) clearly applies to consecutive-sentencing review, R.C. 2929.11 and 2929.12 both clearly apply only to *individual* sentences.

2019-Ohio-4761, ¶¶16-17(emphasis in original).

**{¶119}** "In order to impose consecutive terms of imprisonment, a trial court is required to make the findings mandated by R.C. 2929.14(C)(4) at the sentencing hearing and incorporate its findings into its sentencing entry[.]"  *State v. Bonnell*, 140 Ohio St.3d 209, 2014-Ohio-3177, ¶37.  Otherwise, the imposition of consecutive sentences is contrary to law.  *See* Id.  The trial court is not required "to give a talismanic incantation of the words of the statute, provided that the necessary findings can be found in the record and are incorporated into the sentencing entry."  Id.

---

[8] Sentencing Transcript, July 3, 2019 at 18.

**ISSUE FOR APPEAL.**

*A. Whether the trial court properly imposed consecutive sentences in Hodge's case.*

**R.C. 2929.14 (C)(4) Consecutive Sentences.**

{¶120} R.C. 2929.14(C)(4) concerns the imposition of consecutive sentences. In Ohio, there is a statutory presumption in favor of concurrent sentences for most felony offenses. R.C. 2929.41(A). The trial court may overcome this presumption by making the statutory, enumerated findings set forth in R.C. 2929.14(C) (4). *State v. Bonnell,* 140 Ohio St.3d 209, 2014-Ohio-3177, 16 N.E.3d 659, ¶23. This statute requires the trial court to undertake a three-part analysis. *State v. Alexander,* 1st Dist. Hamilton Nos. C–110828 and C–110829, 2012-Ohio-3349, 2012 WL 3055158, ¶ 15.

{¶121} R.C. 2929.14(C)(4) provides,

> If multiple prison terms are imposed on an offender for convictions of multiple offenses, the court may require the offender to serve the prison terms consecutively if the court finds that the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court also finds any of the following:
>
> (a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.

(b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.

(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

{¶122} Thus, in order for a trial court to impose consecutive sentences the court must find that consecutive sentences are necessary to protect the public from future crime or to punish the offender. The court must also find that consecutive sentences are not disproportionate to the offender's conduct and to the danger the offender poses to the public. Finally, the court must make at least one of three additional findings, which include that (a) the offender committed one or more of the offenses while awaiting trial or sentencing, while under a sanction imposed under R.C. 2929.16, 2929.17, or 2929.18, or while under post-release control for a prior offense; (b) at least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the offenses was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct would adequately reflect the seriousness of the offender's conduct; or (c) the offender's criminal history demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender. *See, State v. White*, 5th Dist. Perry No. 12-CA-00018, 2013-Ohio-2058, ¶36.

{¶123} In the case at bar, the trial court had the benefit of a Pre-Sentence Investigation Report.  Sentencing Transcript, July 3, 2019 at 14.  In this case, the record does support a conclusion that the trial court made all of the findings required by R.C. 2929.14(C)(4) at the time it imposed consecutive sentences.

**R.C. 2929.14(C)(4): [T]he court may require the offender to serve the prison terms consecutively if the court finds that the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public.**

{¶124} In the case at bar, the trial court noted Hodge's prior involvement with the court system dating back to when he was a juvenile.  Sentencing Transcript, July 3, 2019 at 14-15.  The trial court further noted that after the incidents in the case at bar had occurred, Hodge received a 20-year sentence for the incidents in the Muskingum County case.  Id. at 15.  The court further noted that even after Hodge had been indicted in this case and released on bond, he continued to engage in criminal activity.  Id. at 17.  The court specifically made the findings that consecutive sentences are necessary and not disproportionate to Hodge's conduct.  Id. at 18

**R.C. 2929.14(C)(4)(a): The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.**

{¶125} In the case at bar, Hodge continued to engage in criminal conduct in the case at bar even after he was released on bail on February 22, 2018.

**R.C. 2929.14(C)(4)(b): At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.**

{¶126} The trial court made this finding in Hodge's case. Sentencing Transcript, July 3, 2019 at 18-19.

**R.C. 2929.14(C)(4)(c): The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.**

{¶127} In the case at bar, the trial court made this finding on the record. Sentencing Transcript, July 3, 2019 at 14-17.

*B. Whether the trial court's decision to impose consecutive sentences in Hodge's case is supported by the record.*

{¶128} According to the Ohio Supreme Court, "the record must contain a basis upon which a reviewing court can determine that the trial court made the findings required by R.C. 2929.14(C)(4) before it imposed consecutive sentences." *Bonnell*, ¶28. "[A]s long as the reviewing court can discern that the trial court engaged in the correct analysis and can determine that the record contains evidence to support the findings, consecutive sentences should be upheld." Id. at ¶29.

{¶129} The plurality of the Ohio Supreme Court in *Gwynne* held that appellate courts may not review consecutive sentences for compliance with R.C. 2929.11 and R.C. 2929.12. *See* 2019-Ohio- 4761, ¶18.

{¶130} Upon review, we find that the trial court's sentencing on the charges complies with applicable rules and sentencing statutes. The sentence was within the statutory sentencing range. Further, the record contains evidence supporting the trial court's findings under R.C. 2929.14(C) (4). Therefore, we have no basis for concluding that it is contrary to law.

{¶131} Hodge's Fourth Assignment of Error is overruled.

V.

{¶132} In his Fifth Assignment of Error, Hodge contends that the trial court erred by failing to merge Hodge's theft and breaking and entering convictions, as they pertain to J.D.'s property, in violation of the Double Jeopardy Clause of the Fifth Amendment of the United States Constitution. [Appellant's Brief at 12].

{¶133} As the state correctly notes,

Hodge contends his sentences must merge for convictions of Breaking and Entering and Theft related to victim, J.D. Unfortunately, Hodge only suffered one direct conviction related to victim J.D., a conviction for Breaking and Entering in count 6. The superseding indictment did not contain a separate count alleging Theft of J.D.'s property thus the error alleged by Hodge does not exist.

Appellee's Reply Brief, filed Feb 24, 2020 at 19.

{¶134} Hodge's Fifth Assignment of Error is overruled.

{¶135} The judgment of the Fairfield County Court of Common Pleas is affirmed, in part and overruled in part. Pursuant to Section 3(B) (2), Article IV of the Ohio Constitution the **conviction and sentence for Count 8 of the Indictment,**

**Intimidation, are vacated.** This decision in no way affects the verdicts issued by the jury on any other count. It only affects the jury's finding of Guilt and the court's sentence upon Count 8 of the Indictment, Intimidation.

By Gwin, P.J.,

Wise, John, J., and

Delaney, J., concur