[Cite as *State v. Yambrisak*, 2013-Ohio-1406.]

COURT OF APPEALS
RICHLAND COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|                          |   | JUDGES:                        |
|--------------------------|---|--------------------------------|
| STATE OF OHIO            | : | Hon. Patricia A. Delaney, P.J. |
|                          | : | Hon. W. Scott Gwin J.          |
| Plaintiff-Appellee       | : | Hon. John W. Wise, J.          |
|                          | : |                                |
| -vs-                     | : |                                |
|                          | : | Case No. 2012-CA-50            |
| BYRON YAMBRISAK          | : |                                |
|                          | : |                                |
| Defendant-Appellant      | : | O P I N I O N                  |


CHARACTER OF PROCEEDING:     Criminal appeal from the Richland County
                             Court of Common Pleas, Case No.
                             2011CR0651

JUDGMENT:                    Vacated and Remanded


DATE OF JUDGMENT ENTRY:      April 5, 2013


APPEARANCES:

For Plaintiff-Appellee               For Defendant-Appellant

JILL COCHRAN                         R. PAUL CUSHION, II.
38 South Park Street                 75 Public Square, Ste. 1111
Mansfield, OH  44902                 Cleveland, OH  44113

*Gwin, J.,*

{¶1}   Appellant Byron Yambrisak appeals his conviction in the Richland County Court of Common Pleas on one count of retaliation against a public servant or witness, a felony of the third degree in violation of R.C. 2921.05(A) and one count of intimidation of a public servant a felony of the third degree in violation of R.C. 2921.03(A).

### Facts and Procedural History

{¶2}   In the late morning of July 15, 2011, Detective Pat Smith of the Richland County Sherriff's Department was called to MedCentral Hospital to investigate a child victim of rape. Detective Smith was in plain clothes and driving an unmarked vehicle; however she did have her service revolver holstered on her right hip. She left the hospital a few minutes before 1:00 p.m. Detective Smith testified that she had parked her unmarked vehicle in the parking lot located on Glessner Avenue, across from the hospital. As she prepared to cross the street at the pedestrian crosswalk, a small green vehicle sped through the crosswalk.

{¶3}   Detective Smith crossed at the crosswalk towards the parking lot. As she approached her vehicle, Detective Smith was hailed by an old acquaintance, Vernessa Bond, who happened to be parked near Detective Smith's vehicle. The two engaged in a casual conversation. While the two conversed, the little green vehicle drove by again. The male passenger began yelling racial slurs towards Detective Smith and Ms. Bond, both of whom are African-American. The verbal tirade included phrases such as "I hate you, you fucking nigger. You black bitch, I'm going to fuck you up."

{¶4}   The vehicle proceeded on towards Glessner Avenue as the two women continued their conversation. The vehicle returned and stopped on Lind Avenue, close

to where the women were parked. The occupant began yelling racial slurs again this time including, "Do you like talking to young girls about sex? Do you like talking to prostitutes about sex? I hate you, you fucking nigger, I'm going to fuck you up." Detective Smith took two steps towards the vehicle to see if she could identify the occupant. Detective Smith then testified that she yelled, "I know who you are, Byron Yambrisak, you need to be on your way." The vehicle immediately sped away. Detective Smith immediately called dispatch on her cell phone to report the incident, prior to returning to her vehicle.

{¶5} At the sheriff's department, Detective Smith reported the incident to second in command, Major Fortney. She was instructed to make a written statement and Major Fortney contacted the Mansfield Police Department to send an officer over to take a report as the incident occurred in their jurisdiction.

{¶6} Because of the incident, Detective Smith attempted to obtain a civil stalking protection order against Yambrisak based on the singular event that occurred on July 15, 2011. The civil stalking protection order was denied.

{¶7} On May 10, 2011, the Richland County Grand Jury returned an indictment charging Yambrisak with one count Retaliation pursuant to R.C.2921.05 (A) and one count of Intimidation pursuant to R.C. 2921.03(A). The basis for the indictment was presented during Yambrisak's jury trial.

{¶8} At trial, the state presented evidence that in 2009, during the course of her duties as a detective, Detective Smith investigated an allegation that Yambrisak was trying to hire someone to kill his ex-girlfriend, a prostitute by the name of Gillisa

Morgan.[1] As a result, Yambrisak was eventually charged with aggravated menacing and menacing by stalking. Yambrisak was arrested on the warrant on May 20, 2009 and Detective Smith appeared at the jail and served him with the complaint. The Mansfield Law Director later dismissed the aggravated menacing and menacing by stalking case.

{¶9} By Detective Smith's own admission, between October 2009 and July 15, 2011, she had absolutely no contact with Yambrisak.

{¶10} The jury found the Yambrisak guilty on both counts. On June 11, 2012, the trial court sentenced Yambrisak to a term of incarceration of three years on the retaliation count. The trial court further sentenced him to three years of community control on this charge. Likewise, the intimidation charge, the trial court sentenced Yambrisak to a maximum term of three years of incarceration and three years of community control on this count to begin on release from prison on the prior count.

### *Assignments of Error*

{¶11} Yambrisak raises seven assignments of error,

{¶12} "I. AN "UNLAWFUL THREAT OF HARM" IS REQUIRED UNDER THE RETALIATION STATUTE, SET FORTH IN ORC §2921.05, AND THE INTIMIDATION STATUTE, SET FORTH IN ORC §2921.03, AND IS SATISFIED ONLY WHEN THE VERY MAKING OF THE THREAT OF HARM IS ITSELF UNLAWFUL BECAUSE IT VIOLATES ESTABLISHED CRIMINAL OR CIVIL LAW, AND THIS "UNLAWFUL THREAT" MUST CONNOTE MORE THAN A BENIGN THREAT FOR PURPOSES OF THE RETALIATION STATUTE, AND THE INTIMIDATION STATUTE AS THE THREAT

---

[1] Yambrisak raised as his second assignment of error that the length and detail into which the prosecutor was permitted to delve into the unproven allegations of the 2009 incident was prejudicial error. While we express our concern that those details were not necessary to prove any element of either offense, in light of out disposition of the assignments under consideration, we need not address this concern in the present case.

MUST COMMUNICATE TO A PERSON THAT A PARTICULAR CONSEQUENCE MUST FOLLOW FOR SOME SPECIFIED ACTION TAKEN.

{¶13} "II. IT IS REVERSIBLE ERROR TO PERMIT THE INTRODUCTION OF INFORMATION RELATED TO A PRIOR POLICE INVESTIGATION OF THE APPELLANT-DEFENDANT, WHEN NO FORMAL CHARGES OR COURT ACTION WERE BROUGHT AGAINST THE APPELLANT-DEFENDANT RESULTING FROM THE POLICE INVESTIGATIONS, AND WHEN THE BASIS FOR THE INVESTIGATIONS INVOLVED SPURIOUS ALLEGATIONS THAT THE APPELLANT-DEFENDANT WAS ALLEGED TO HAVE HIRED A "HIT MAN" TO KILL HIS "PROSTITUTE GIRLFRIEND", AS THESE ALLEGATIONS WERE UNPROVEN, IRRELEVANT AND FAR MORE PREJUDICIAL THAN PROBATIVE, AND THEIR IMPACT UPON THE PROCEEDINGS TAINTED THE ENTIRE TRIAL, AND SUBSTANTIALLY PREJUDICED THE APPELLANT-DEFENDANT IN THE EYES OF THE JURY.

{¶14} "III. WHEN A CITIZEN CRITICIZES OR CHASTISES A POLICE OFFICER AND USES VITUPERATIVE AND VITRIOLIC WORDS, NO MATTER HOW DISTASTEFUL THOSE WORDS MAY BE, SUCH METRIC AND/OR CRITICISM IS PROTECTED SPEECH UNDER THE FIRST AMENDMENT TO THE UNITED STATES CONSTITUTION AND MAY NEVER BE CENSORED OR SUBJECT TO CRIMINAL PROSECUTION.

{¶15} "IV. THE TRIAL COURT ERRED IN DENYING THE APPELLANT-DEFENDANT'S REQUEST FOR A JURY INSTRUCTION THAT SET FORTH THE FIRST AMENDMENT LAW RELATED TO PROTECTED SPEECH, *INTER ALIA,*

WHEN THE BASIS OF THE CHARGES AGAINST THE APPELLANT-DEFENDANT WERE BASED UPON WORDS ALONE.

{¶16} "V. THE TRIAL COURT ABUSED ITS DISCRETION WHEN SENTENCING THE APPELLANT-DEFENDANT TO THE MAXIMUM INCARCERATION PERIOD OF THREE (3) YEARS ON BOTH LOW-LEVEL FELONIES OF THE THIRD DEGREE, WHEN THE APPELLANT-DEFENDANT HAD NEVER BEEN CONVICTED OF ANY PRIOR FELONY IN HIS LIFE, AND WHERE THE MANDATES OF ORC §2929.11(A) DICTATE THAT THE OVERRIDING PURPOSES OF FELONY SENTENCING ARE TO PROTECT THE PUBLIC AND TO PUNISH THE OFFENDER USING THE MINIMUM SANCTIONS THAT THE COURT DETERMINES ACCOMPLISH THOSE PURPOSES WITHOUT IMPOSING AN UNNECESSARY BURDEN ON STATE OR LOCAL GOVERNMENT RESOURCES .

{¶17} "VI. THERE WAS INSUFFICIENT EVIDENCE PRESENTED BY THE STATE OF OHIO RELEVANT TO BOTH THE *RETALIATION* AND THE *INTIMIDATION* CONVICTION TO SUSTAIN A CONVICTION, WHEN THERE WAS NO EVIDENCE PRODUCED THAT A PUBLIC SERVANT WAS, PRIOR TO OR DURING TRIAL, INVOLVED IN A COURT PROCEEDING WHEN THE ALLEGED *RETALIATION* AND/OR *INTIMIDATION* CHARGED OCCURRED.

{¶18} "VII. WITHOUT PROOF BEYOND A REASONABLE DOUBT THAT THE CONDUCT OF THE OFFENDER HAD A FACTUAL NEXUS TO THE UNDERLING CHARGES THAT RESULTED IN A COURT PROCEEDING, NO CONVICTION ON CHARGES OF EITHER *RETALIATION* OR *INTIMIDATION* MAY BE HAD."

I, VI & VII

**{¶19}** In his first, sixth and seventh assignments of error, Yambrisak essentially challenges the sufficiency and the weight of the evidence.

**{¶20}** Because we find the issues raised in these assignments of error are closely related for ease of discussion we shall address the assignments of error together.

**{¶21}** Our review of the constitutional sufficiency of evidence to support a criminal conviction is governed by *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), which requires a court of appeals to determine whether "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Id.; see also *McDaniel v. Brown*, 558 U.S. 120, 130 S.Ct. 665, 673, 175 L.Ed.2d 582(2010) (reaffirming this standard); *State v. Fry*, 125 Ohio St.3d 163, 926 N.E.2d 1239, 2010–Ohio–1017, ¶ 146; *State v. Clay*, 187 Ohio App.3d 633, 933 N.E.2d 296, 2010–Ohio–2720, ¶ 68.

**{¶22}** Weight of the evidence addresses the evidence's effect of inducing belief. *State v. Thompkins*, 78 Ohio St.3d 380, 386-387, 678 N.E.2d 541 (1997), *superseded by constitutional amendment on other grounds as stated by State v. Smith,* 80 Ohio St.3d 89, 684 N.E.2d 668, 1997-Ohio–355. Weight of the evidence concerns "the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue

which is to be established before them. Weight is not a question of mathematics, but depends on its effect in inducing belief." (Emphasis sic.) Id. at 387, 678 N.E.2d 541, quoting Black's Law Dictionary (6th Ed. 1990) at 1594.

{¶23} When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a "'thirteenth juror'" and disagrees with the fact finder's resolution of the conflicting testimony. Id. at 387, 678 N.E.2d 541, quoting *Tibbs v. Florida*, 457 U.S. 31, 42, 102 S.Ct. 2211, 72 L.Ed.2d 652 (1982). However, an appellate court may not merely substitute its view for that of the jury, but must find that "'the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *State v. Thompkins*, supra, 78 Ohio St.3d at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717, 720–721(1st Dist. 1983). Accordingly, reversal on manifest weight grounds is reserved for "'the exceptional case in which the evidence weighs heavily against the conviction.'" Id.

{¶24} "[I]n determining whether the judgment below is manifestly against the weight of the evidence, every reasonable intendment and every reasonable presumption must be made in favor of the judgment and the finding of facts. * * *

{¶25} "If the evidence is susceptible of more than one construction, the reviewing court is bound to give it that interpretation which is consistent with the verdict and judgment, most favorable to sustaining the verdict and judgment."
*Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984), fn. 3, quoting 5 Ohio Jurisprudence 3d, Appellate Review, Section 60, at 191–192 (1978).

**{¶26}** In the case at bar, Yambrisak was charged with retaliation against a public servant or witness. The language of the indictment which reads,

> (A) No person, knowingly and by force or by unlawful threat of harm to any person or property, shall attempt to influence, intimidate, or hinder a public servant, a party official, or an attorney or witness involved in a civil action or proceeding in the discharge of the duties of the public servant, party official, attorney, or witness.

**{¶27}** "A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist." R.C. 2901.22(B).

**{¶28}** Yambrisak was also charged with retaliation. R.C. 2912.05 provides,

> (A) No person, purposely and by force or by unlawful threat of harm to any person or property, shall retaliate against a public servant, a party official, or an attorney or witness who was involved in a civil or criminal action or proceeding because the public servant, party official, attorney, or witness discharged the duties of the public servant, party official, attorney, or witness.

**{¶29}** R.C. 2901.22 Culpable mental states, provides:

> (A) A person acts purposely when it is his specific intention to cause a certain result, or, when the gist of the offense is a prohibition against conduct of a certain nature, regardless of what the offender

intends to accomplish thereby, it is his specific intention to engage in conduct of that nature.

**{¶30}** According to R.C. 2921.01(B)(1), the term "public servant" includes within its definition a "public official." The latter term is defined as "any elected or appointed officer, or employee, or agent of the state or any political subdivision, whether in a temporary or permanent capacity, and includes, but is not limited to, legislators, judges, and law enforcement officers." R.C. 2921.01(A).

**{¶31}** Both intimidation and retaliation require that the state prove beyond a reasonable doubt an "unlawful threat of harm." The Supreme Court of Ohio suggested that, to be unlawful, the threat itself must violate a predicate offense. *State v. Cress*, 112 Ohio St.3d 72, 858 N.E.2d 341, 2006–Ohio–6501, ¶43.(Construing the "unlawful threat of harm" element of R.C. 2912.04(B), attempt to intimidate victim, witness or attorney for being a witness) The court held "that the statutory language in R.C. 2921.04(B), proscribing intimidation by an 'unlawful threat of harm,' is satisfied only when the very making of the threat is itself unlawful because it violates established criminal or civil law." Id. at ¶ 42, 858 N.E.2d 341. The court held that the threat itself, not the threatened conduct, must be unlawful. Id. at ¶ 38, 858 N.E.2d 341. As the "threat of harm" language of R.C. 2921.03 is identical to the language construed by the Court in *Kress*, we find the Supreme Court's analysis to be persuasive in a case involving intimidation under R.C. 2921.03(A).

**{¶32}** In this case, the only evidence of an alleged unlawful threat of harm are the following statements,

I hate you, you fucking nigger. You black bitch, I'm going to fuck you up.

* * *

Do you like talking to young girls about sex? Do you like talking to prostitutes about sex? I hate you, you fucking nigger. I'm going to fuck you up.

1T. at 145-146. Yambrisak does not deny that he made these statements or that he directed the statements to Detective Smith.

**{¶33}** In and of themselves the majority of statements are not threatening. Statements such as "I hate you," "Do you like talking to young girls about sex? Do you like talking to prostitutes about sex?"; "You black bitch"; and "I hate you, you fucking nigger" did not make an unlawful threat of harm toward Smith. Although contemptible and debauched, the substance of the "threats" were statements of Yambrisak's feelings and opinions.

**{¶34}** The more vexing problem is posed by Yambrisak's use of the terms, "I'm going to fuck you up." As the Supreme Court of Ohio has noted, "[t]he most intimidating threat of all may be an indefinite one ('You'll be sorry')." *State v. Cress*, 112 Ohio St.3d 72, 858 N.E.2d 341, 2006–Ohio–6501,¶ 37. The words chosen are themselves ambiguous and did not mention a particular criminal act or give other particulars. However, when taken in the context of Yambrisak's other rants the statement can take on a more troubling tone.

**{¶35}** A second consideration is what did Yambrisak intend to convey by his tirade. To constitute retaliation Yambrisak must have had a specific intention to cause a certain result. In the case at bar, Detective Smith did investigate Yambrisak in 2009.

**{¶36}** The trial court in *State v. Fuqua,* 3rd Dist. No. 6-02-01, 2002-Ohio-4697 noted that "witness" includes those who see or hear an event as well as those who testify in court about it. Id. at ¶ 9. The trial court also noted that "[t]he duties of a 'witness' include not only the act of testifying but all of the preliminary aspects of becoming *formally involved in the process of identification and case preparation."* Id. at ¶ 10 (emphasis added). The appellate court agreed and concluded that retaliation applies even if the witness never had to testify against the defendant. Id. at ¶ 20.

**{¶37}** We find the above-quoted reasoning persuasive. However, in the case at bar, in order to convict Yambrisak of retaliation, the evidence must prove that any threat of unlawful harm be directed at Detective Smith because of her prior involvement with him in 1999.

**{¶38}** We find under the facts of this case that this "nexus" between Yambrisak and Detective Smith is lacking. Detective Smith testified that her involvement with Yambrisak in 2009 was uneventful. No threats, accusations or problems ensued between her investigation of the allegations and serving the arrest warrant in October 2009 and her chance meeting him on July 15, 2011. Those charges were dismissed in their entirety by the prosecuting attorney. In addition, the occurrence in July 2011 happened in broad daylight in full view of not only Deputy Smith's acquaintance, but also other persons in and around the street. Once identified, Yambrisak sped away.

**{¶39}** We find based upon all the surrounding circumstances, Yambrisak's words were too unequivocal, unconditional, not immediate and not specific enough to convey to Detective Smith that he was retaliating for her involvement with him two years earlier.

**{¶40}** We find there was insufficient evidence in the record that Yambrisak purposefully or unlawfully threatened Detective Smith in retaliation for her involvement with his 1999 criminal matter.

**{¶41}** Likewise, we find insufficient evidence in the record to find that Yambrisak attempted to influence, intimidate, or hinder Deputy Smith in the discharge of her duty. Nothing Yambrisak did or said on July 15, 2011 was in any way related to or hindered Detective Smith in the discharge of her duties. Her duties in the 2009 case against him were completed and no charges were ever prosecuted. Yambrisak's words were too unequivocal, unconditional, not immediate and not specific enough to convey to Detective Smith that Yambrisak was attempting to influence, intimidate, or hinder Deputy Smith in the discharge of her duties.

**{¶42}** We find there was insufficient evidence in the record to find that Yambrisak knowingly by unlawful threat of harm was attempting to influence, intimidate, or hinder Detective Smith in the discharge of her duties.

**{¶43}** Appellant's first, sixth and seventh assignments of error are sustained. Section 3(B) (2), Article IV of the Ohio Constitution and R.C. 2953.07, give an appellate court the power to affirm, reverse, or modify the judgment of an inferior court. Accordingly, the convictions and sentences are vacated, and this case is remanded for the trial court to enter judgments of acquittal on all counts.

**{¶44}** In light of our disposition of the first, sixth and seventh assignments of error, we find Yambrisak's second, third, fourth and fifth assignments of error to be moot.

**{¶45}** The judgment of the Richland County Court of Common Pleas is reversed. Pursuant to Section 3(B) (2), Article IV of the Ohio Constitution and R.C. 2953.07, the convictions and sentences convictions are vacated, and this case is remanded for the trial court to enter judgments of acquittal on all counts.

By Gwin, J.,

Delaney, P.J., and

Wise, J., concur

_____
HON. W. SCOTT GWIN

_____
HON. PATRICIA A. DELANEY

_____
HON. JOHN W. WISE

WSG:clw 0304

[Cite as *State v. Yambrisak*, 2013-Ohio-1406.]

IN THE COURT OF APPEALS FOR RICHLAND COUNTY, OHIO

FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | |
| | : | |
| | : | |
| -vs- | : | JUDGMENT ENTRY |
| | : | |
| BYRON YAMBRISAK | : | |
| | : | |
| | : | |
| Defendant-Appellant | : | CASE NO. 2012-CA-50 |

For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Richland County Court of Common Pleas is reversed. Pursuant to Section 3(B) (2), Article IV of the Ohio Constitution and R.C. 2953.07, the convictions and sentences are vacated, and this case is remanded for the trial court to enter judgments of acquittal on all counts. Costs to Appellee.

_____
HON. W. SCOTT GWIN

_____
HON. PATRICIA A. DELANEY

_____
HON. JOHN W. WISE