[Cite as *State v. Blakovich*, 2022-Ohio-3287.]

# IN THE COURT OF APPEALS OF OHIO

SEVENTH APPELLATE DISTRICT
COLUMBIANA COUNTY

STATE OF OHIO,

Plaintiff-Appellee,

v.

WILLIAM M. BLAKOVICH, III,

Defendant-Appellant.

---

**OPINION AND JUDGMENT ENTRY**
**Case No. 21 CO 0021**

---

Criminal Appeal from the
Court of Common Pleas of Columbiana County, Ohio
Case No. 21 CR 09

**BEFORE:**
David A. D'Apolito, Gene Donofrio, Cheryl L. Waite, Judges.

---

**JUDGMENT:**
Affirmed.

---

*Atty. Vito Abruzzino*, Columbiana County Prosecutor and *Atty. Tammie M. Jones*, Assistant Prosecuting Attorney, Columbiana County Prosecutor's Office, 135 South Market Street, Lisbon, Ohio 44432, for Plaintiff-Appellee and

*Atty. Robert T. McDowall, Jr.,* 415 Wyndclift Place, Youngstown, Ohio 44515, for Defendant-Appellant.

Dated: September 16, 2022

**D'APOLITO, J.**

{¶1} Appellant William Blakovich III appeals his maximum sentence imposed by the Columbiana County Court of Common Pleas following his conviction by jury for one count of domestic violence in violation of R.C. 2919.25(A), a felony of the third degree. Appellant also challenges his conviction by jury for one count of intimidating a witness in violation of R.C. 2921.04(A), a misdemeanor of the first degree, based on the argument that the underlying indictment inexactly states the dates forming the basis for his conviction. For the following reasons, Appellant's maximum sentence for his domestic violence conviction and his conviction for intimidating a witness are affirmed.

## FACTS AND PROCEDURAL HISTORY

{¶2} Appellant and Kalin Ratkovich ("Ratkovich") were involved in a turbulent romantic relationship for a period of roughly three years and are parents to a two-year-old daughter (d.o.b. 12/10/2019). Appellant has been convicted of domestic violence two times prior to the conviction currently on appeal. Ratkovich is the victim in all three cases.

{¶3} Specifically, Appellant was convicted of domestic violence, a misdemeanor of the first degree, on February 7, 2019 in East Liverpool Municipal Court, and of domestic violence, a felony of the fourth degree, on December 20, 2019 in the Columbiana County Court of Common Pleas. (*Id.* at 402.) Ratkovich was pregnant with their daughter when the events giving rise to the second conviction occurred.

{¶4} On December 17, 2020, the East Liverpool Police Department received a 9-1-1 call reporting a domestic disturbance involving an infant at 903 Vine Street, East Liverpool, Ohio. When the first officer arrived, he witnessed Appellant departing from the area in a motor vehicle.

{¶5} The officer initiated a traffic stop during which Appellant told the officer that Ratkovich had attacked him. However, the officer did not see any rips or tears to the Appellant's shirt or any marks or injuries to Appellant's body.

{¶6} As the two men conversed, Ratkovich approached them and reported to the officer that Appellant had thrown her to the ground and choked and slapped her. Ratkovich further reported that she was afraid that Appellant was going to take and harm or kill their child.

Case No. 21 CO 0021

**{¶7}** Ratkovich was crying and hysterical. The officer testified that Ratkovich's injuries included a broken fingernail, a scratch on her neck, and red marks on the right side of her face, which were consistent with the altercation she described. Photographs of Ratkovich admitted at trial reveal that a portion of one of her fingernails was torn away, not broken.

**{¶8}** Ratkovich testified at trial that Appellant was violent and abusive throughout their relationship. He regularly threatened to kill her and her daughter whenever she expressed a desire to end their relationship.

**{¶9}** According to Ratkovich's testimony, on the morning of December 17, 2020, Appellant informed her that he "thinks about putting [her] body in [her] car and pushing it into the river to make it look like [she] killed [herself.]" (*Id.* at 301.) Ratkovich responded, "Well, if we don't like each other, maybe we should not be together anymore." (*Id.*) Ratkovich speculated that the suggestion they should end their relationship precipitated the physical assault.

**{¶10}** Sometime after Appellant's arrest, Ratkovich reported to the East Liverpool Police Department that Appellant had contacted her repeatedly in order to intimidate her. Appellant's jail telephone call records were obtained and a number of telephone calls to Ratkovich made from December 22-26, 2020 were discovered.

**{¶11}** A review of the calls, and specifically the voicemail messages left by Appellant, revealed his efforts to prevent Ratkovich from testifying against him. He threatened to make a report to Children Services in order to have their child removed from Ratkovich's home, and to contact law enforcement about her alleged drug use if Ratkovich did not change her story. Further, the state offered testimony and evidence to establish that Appellant solicited a third person to place a three-way call to Ratkovich in order to threaten her.

**{¶12}** Ratkovich also provided screen shots of messages from a Facebook Messenger account from Appellant from December 17, 2020, shortly after he was arrested for assaulting her, in which he talked about marrying her. Appellant encouraged Ratkovich to look in the pocket of his sweatshirt to find an engagement ring. Ratkovich testified that Appellant often acted tenderly toward her in order to manipulate her actions.

**{¶13}** At the close of the state's case, Appellant's counsel moved for dismissal of

the intimidation charge based on the sufficiency of the evidence and the allegedly incorrect date in the indictment.  Count one of the indictment reads, in its entirety:

> On or about the 17th day of December, 2020, in Columbiana County, Ohio, [Appellant] did knowingly attempt to intimidate or hinder the victim of a crime or delinquent act in the filing or prosecution of criminal charges or a delinquent child action or proceeding; in violation of [R.C. 2921.04(A)], being a misdemeanor of the first degree.

{¶14} The state argued that Appellant's efforts to hinder Ratkovich's filing or prosecution of criminal charges against him began when he contacted her through Facebook Messenger on December 17, 2020, and asked her to marry him.  The state argued, in the alternative, that:  (1) Ohio law does not require that the exact date of alleged criminal conduct be memorialized in an indictment; and (2) discovery provided to Appellant's counsel prior to trial put Appellant on notice of the actual dates of the alleged acts of intimidation.  The trial court overruled the Criminal Rule 29 motion.

{¶15} Appellant testified on his own behalf.  Appellant conceded that he argued with Ratkovich on December 17, 2020.  According to Appellant's testimony, he planned to depart from the residence in order to diffuse the situation when he realized that he left an engagement ring in the pocket of his sweatshirt.  He returned to the house to retrieve the ring, fearing that Ratkovich would find it while looking for cigarettes, but Ratkovich blocked Appellant's reentry into the residence.

{¶16} Appellant denied physically harming Ratkovich. However, he admitted that he placed numerous telephone calls to Ratkovich after his arrest, and during those telephone calls, he threatened to report Ratkovich to both Children Services and to law enforcement.

{¶17} On December 17, 2020, Appellant was arrested and charged in the East Liverpool Municipal Court with domestic violence, a felony of the third degree, in violation of R.C. 2919.25(A).  Following a preliminary hearing, the matter was bound over to the Columbiana County Court of Common Pleas.

{¶18} The Columbiana County Grand Jury returned an indictment against Appellant on January 14, 2021, charging the two counts for which he was ultimately

convicted. Appellant pled not guilty, and the matter proceeded to a trial by jury on June 1, 2021. The jury returned verdicts of guilty on June 3, 2021.

{¶19} At a sentencing hearing on June 4, 2021, the trial court imposed a term of 180 days in the county jail on the misdemeanor offense, and a term of 36 months in a state correctional facility on the felony offense, to be served consecutively. This timely appeal followed.

## ASSIGNMENT OF ERROR NO. 1

**THE INDICTMENT WAS FATALLY FLAWED AS IT CHARGED DEFENDANT WITH INTIMIDATION OF A WITNESS IN VIOLATION OF R.C. 2921.04(A) OCCURRING "ON OR ABOUT THE 17TH DAY OF DECEMBER, 2020" WHEN THE PURPORTED ACTS OF INTIMIDATION OCCURRED LATER IN TIME.**

{¶20} The state argues that the indictment correctly states the onset of Appellant's criminal conduct, that is, the day of his arrest on December 17, 2020, because he sent messages through social media on that day asking Ratkovich to marry him. The state's argument is predicated upon the theory that Appellant's proposal of marriage constitutes "hindering" under the intimidation statute. R.C. 2921.04(A) reads, in pertinent part, "[n]o person shall knowingly attempt to intimidate or hinder the victim of a crime * * * in the filing or prosecution of criminal charges * * *."

{¶21} The Ohio Supreme Court had opined that intimidation "by definition involves the creation of fear in a victim, and the very nature of a threat is the creation of fear of negative consequences for the purpose of influencing behavior." *State v. Cress*, 112 Ohio St.3d 72, 2006-Ohio-6501, 858 N.E.2d 341, ¶ 40. However, the Ohio Supreme Court has yet to define the term "hinder" for the purposes of the statute.

{¶22} "Hinder" is commonly defined as follows: "to cause delay; interruption; or difficulty in; hamper; impede" or "to prevent from doing, acting, or happening; stop." www.dictionary.com "Hinder" is further defined, "to create difficulties for (someone or something), resulting in delay or obstruction." www.google.com

{¶23} In addition to the fact that the Ohio Supreme Court has not defined the term

Case No. 21 CO 0021

"hinder" for the purposes of the intimidation statute, we note that R.C. 2921.04(B) criminalizes the knowing attempt to *influence, intimidate, or hinder* the victim of a crime in the filing of criminal charges by force of unlawful threat of harm. The state did not undertake any statutory analysis of the term "hinder" in their appellate brief, nor did it attempt to distinguish the terms "hinder" and "influence."

**{¶24}** Although the state asks us to address this matter of first impression in Ohio, we find that we can resolve Appellant's challenge to the indictment based on existing precedent. In *State v. Gawron*, 7th Dist. Belmont No. 20 BE 0009, 2021-Ohio-3634, we acknowledged that the state is not required to prove the exact date of an offense, only that it occurred "on or about" a certain date or within a certain time period. *Id.* at ¶ 67. We further acknowledged that, with respect to a criminal charge, the exact date and time are immaterial unless, due to the nature of the offense, exactness of time is essential. In other words, it is sufficient to prove the alleged offense at or about the time charged. *Id.*

**{¶25}** At trial, the state presented evidence of threatening telephone calls to Ratkovich from Appellant placed from December 22-26, 2020. We find that the phrase "on or about December 17, 2020" in the indictment was sufficiently close in time to the evidence adduced at trial to put Appellant on notice of the charged conduct. We further find that exactness of time is not essential to an intimidation charge. Accordingly, we conclude that the first assignment of error has no merit and affirm Appellant's conviction for intimidating a witness.

## ASSIGNMENT OF ERROR NO. 2

### DEFENDANT'S MAXIMUM SENTENCE WAS UNDULY HARSH.

**{¶26}** Pursuant to R.C. 2953.08(G)(2), this Court may either increase, reduce, modify, or vacate a sentence and remand for resentencing where the Court clearly and convincingly finds that either the record does not support the sentencing court's findings under R.C. 2929.13(B) or (D), 2929.14(B)(2)(e) or (C)(4), or 2929.20(I), or the sentence is otherwise contrary to law. "Clear and convincing evidence is that measure or degree of proof which is more than a mere 'preponderance of the evidence,' but not to the extent of such certainty as is required 'beyond a reasonable doubt' in criminal cases, and which

will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *Cross v. Ledford*, 161 Ohio St. 469, 120 N.E.2d 118 (1954), paragraph three of the syllabus.

**{¶27}** Appellant contends that the maximum sentence imposed for the domestic abuse conviction is not supported by the record based on the sentencing factors listed in R.C. 2929.11 and 2929.12. However, in *State v. Jones*, 163 Ohio St.3d 242, 2020-Ohio-6729, 169 N.E.3d 649, the Ohio Supreme Court held that the felony sentencing statutory framework in Ohio does not permit a court of appeals to modify or vacate a sentence based on its view that the sentence is not supported by the record under R.C. 2929.11 and R.C. 2929.12.

**{¶28}** Until *Jones*, appellate courts followed the Ohio Supreme Court's language in *State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, 59 N.E.3d 1231, which reads:

> [I]t is fully consistent for appellate courts to review those sentences that are imposed solely after consideration of the factors in R.C. 2929.11 and 2929.12 under a standard that is equally deferential to the sentencing court. That is, an appellate court may vacate or modify any sentence that is not clearly and convincingly contrary to law only if the appellate court finds by clear and convincing evidence that the record does not support the sentence.

*Id.* at ¶ 23.

**{¶29}** However, in *Jones, supra*, the Ohio Supreme Court concluded that the foregoing language was dicta. *Jones*, ¶ 27. Specifically, the Court held that R.C. 2953.08(G)(2)(b) "does not provide a basis for an appellate court to modify or vacate a sentence based on its view that the sentence is not supported by the record under R.C. 2929.11 and 2929.12." *Id.* at ¶ 39. The *Jones* Court further held that "an appellate court's determination that the record does not support a sentence does not equate to a determination that the sentence is 'otherwise contrary to law' as that term is used in R.C.2953.08(G)(2)(b)." *Id.* at ¶ 32. The Court ultimately held that an appellate court errs where it relies on the dicta in *Marcum* to modify or vacate a sentence based on a lack of

support in the record for the trial court's findings under R.C. 2929.11 and R.C. 2929.12. *Jones* at ¶ 29.

**{¶30}** Although the trial court imposed the maximum sentence for the domestic violence conviction, the sentence falls within the statutory guidelines. We have observed that, "[p]ursuant to *Jones*, in reviewing an alleged error under R.C. 2929.11 and R.C. 2929.12, [this Court] may no longer evaluate whether sentences are supported by the record." *State v. Murphy*, 7th Dist. Mahoning No. 20 MA 0122, 2021-Ohio-4663, ¶ 12. In *Jones,* the Ohio Supreme Court defined "contrary to law" as "in violation of statute or legal regulations at a given time." *Jones,* at ¶ 34. The *Jones* Court unequivocally stated that "contrary to law" is not equivalent to finding that the sentence is not supported by the record. *Id.*

**{¶31}** Appellant argues that, "[i]n the instant case, the trial court failed to exercise its discretion by more appropriately balancing the seriousness and recidivism factors set forth in [R.C. 2929.12] in relation to the facts contained in this case." (Appellant's Brf., p. 17.) Insofar as Appellant relies on the trial court's consideration of the factors enumerated in R.C. 2929.12, we find that his argument is without merit, and affirm Appellant's maximum sentence for domestic violence.

## CONCLUSION

**{¶32}** For the foregoing reasons, Appellant's conviction for intimidating a witness and his sentence for domestic violence are affirmed.


Donofrio, P.J., concurs.

Waite, J., concurs.


Case No. 21 CO 0021

_____

For the reasons stated in the Opinion rendered herein, the assignments of error are overruled and it is the final judgment and order of this Court that the judgment of the Court of Common Pleas of Columbiana County, Ohio, is affirmed. Costs to be waived.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure. It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

### NOTICE TO COUNSEL

**This document constitutes a final judgment entry.**