[Cite as *State v. Camilo*, 2023-Ohio-3067.]

COURT OF APPEALS
FAIRFIELD COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | JUDGES: |
| | : | |
| | : | Hon. W. Scott Gwin, P.J. |
| Plaintiff-Appellee | : | Hon. John W. Wise, J. |
| | : | Hon. Patricia A. Delaney, J. |
| -vs- | : | |
| | : | Case No. 22CA15 |
| | : | |
| ANDRES CAMILO | : | |
| | : | |
| | : | |
| | : | |
| Defendant-Appellant | : | O P I N I O N |

CHARACTER OF PROCEEDING:          Appeal from the Fairfield County
                                                        Municipal Court, Case No. CRB2101548

JUDGMENT:                                    AFFIRMED

DATE OF JUDGMENT ENTRY:        August 30, 2023

APPEARANCES:

For Plaintiff-Appellee:                          For Defendant-Appellant:

JOSEPH SABO                                    MARK J. MILLER
City of Lancaster Law Director's Office     500 City Park Ave., Ste. C
136 West Main St.                               Columbus, OH 43215
P.O. Box 1008
Lancaster, OH 43130

*Delaney, J.*

{¶1} Appellant Andres Camilo appeals from the April 27, 2022 Final Judgment Entry of the Fairfield County Municipal Court. Appellee is the state of Ohio.

**FACTS AND PROCEDURAL HISTORY**

{¶2} The following facts are adduced from the record of appellant's jury trial. At that time, appellant had been married to Jane Doe for three years and they had a child together who was almost four years old. Appellant is a U.S. citizen and Jane Doe is a permanent resident with a green card. The parties were in the midst of a divorce.

{¶3} On May 22, 2021, appellant and Jane Doe argued throughout the day but things were calm by evening. Appellant went to a party at the house of his friend Antonio. At some point, Jane Doe's friend Lana brought Jane to Antonio's house. Jane and appellant remained at Antonio's party for about an hour. In the meantime, Lana was "thrown out" of the party and asked to leave.

{¶4} Jane Doe and appellant therefore left the party together in appellant's vehicle, described as a small Acura wagon. Because the passenger-side front seat was cluttered, Jane sat in the back seat as appellant drove. Jane found a packet of Viagra pills in the back seat and became angry, asking appellant "whether he was even cheating on her if he needed Viagra to be able to cheat."

{¶5} Jane testified appellant became enraged at her comment and drove recklessly, swerving back and forth. Jane wasn't wearing a seat belt and was thrown around in the back seat of the vehicle. She asked appellant to stop driving recklessly. Jane testified appellant pulled into the parking lot of the Nutt House on Route 256 around 11:30 p.m. He attempted to pull Jane out of the back of the car by her legs. Jane testified

they were two miles from home and she did not want to walk home at night. When she refused to get out of the car, appellant started hitting her in the face. Jane testified appellant struck her with his hand in the face multiple times. She denied hitting, kicking, or scratching appellant.

{¶6} Jane called 911 as the assault occurred. The first 911 call was played at trial and transcribed into the record. Jane said, "this is [Jane Doe], I'm in the car with my husband; my husband is beating me." Jane tried to push appellant away as she spoke on the phone. The call ended as appellant drove away.

{¶7} The 911 operator called Jane back. The second 911 call is also transcribed into the record. Jane said she just got home and appellant was trying to leave; she also repeated, "don't touch me." Jane testified she was screaming in the driveway because appellant was approaching her until he realized she was on the phone with 911. At that point, appellant got in his car and drove away.

{¶8} Jane testified the assault left her with a swollen face, black eye, and bloody nose. She testified she called 911 because she was in fear of appellant.

{¶9} Police reported to the residence and contacted Jane but appellant was no longer at the scene. Jane told police what happened, but also said she did not want to press charges and did not want appellant arrested. At trial, Jane testified she was afraid to cooperate with police because she was afraid of appellant's retaliation.

{¶10} Ptl. Leberth of the Pickerington Police Department testified as the responding officer on May 22, 2021, and appellee introduced evidence of Leberth's bodycam. Leberth described Jane Doe as tearful and upset. Her face was swollen and she had a visible red mark over her right eye. Based upon his training and experience,

Leberth testified Jane Doe appeared to have been struck in the face. He photographed her face and hands, noting no injury to her hands. Leberth testified he looked for signs that Jane was the primary aggressor and saw none. Appellant was not present at the scene and was not located that night. Leberth was concerned for Jane's safety because appellant's whereabouts were unknown, but neighbors offered her a place to stay.

{¶11} Jane believed appellant listened to her conversation with police through cameras on the exterior of the house and garage and she remained fearful of cooperating with law enforcement throughout the case.

{¶12} She and appellant remained in contact with each other through text messages and Facebook messages. Ten minutes after police left the home on the night of the incident, the following text conversation occurred, introduced at trial as appellee's Exhibit E, emphasis in original and *sic* throughout:

| Appellant | Jane Doe |
|---|---|
|  | They pressed them without me saying shit. Lana and Mona was here i didnt say anything. They asked ur car etc i didnt tell NOTHING |
| I can't go to jail. You kidding me. Now they have records on coming to my house. |  |
|  | they said in Ohio When there is a Law When you have marks they have to press charges |
|  | And i have a Black eye. My nose is bleeding. My arms are bruiced |
| You can go against it. But whatever. This is ridiculous. |  |
| Now I have to live in a hotel until you leave |  |
| Because I'm not sleeping there |  |
| Fuck that |  |
|  | So this is my fault? |
|  | I have a fucked up face |
|  | [illegible] the shit out of me. |

{¶13} Appellant and Jane continued to have contact through text messages throughout the pendency of the case. Appellee also introduced a text conversation from June 22, 2021 as appellee's Exhibit G, emphasis in original and *sic* throughout:

| Appellant | Jane Doe |
|---|---|
| | Dentist thursday |
| | IDK what they can do for it now but they will check and we will make the plan |
| Babe, my lawyer said he will reach out to you and to NOT talk to the prosecutor again.  NO matter how many letters they send or call.<br><br>They're using the body cam against me. | |
| | So whatever i said the first moment<br>When they walked in there |
| | And after that i calmed down and didnt give no info anymore When they filled out the papers |
| | Thats why they using the bodycam |
| Yup.  So he said whatever you may say that might of came out wrong can be used against me. | |
| | Ok |

{¶14} Appellant was the sole defense witness. He testified he and Jane argued throughout the day on May 22, 2021, and that night he went to Antonio's alone. Jane showed up with Lana, who was soon asked to leave. Appellant and Jane left the party together in his car, with Jane in the back seat. She found Viagra in the car and became angry, striking him as he tried to drive. Appellant said he began to defend himself and struck Jane several times.  He said the fight occurred as they drove and he never stopped the car in a parking lot or tried to pull Jane out of the car. Upon their arrival at home, he fled because Jane called 911 and he didn't want to get in trouble.

{¶15} Appellant testified that since the incident, he and Jane have remained in contact via text messaging. On direct examination, he testified that his comments to Jane about the incident meant that the police only had one side of the story and Jane needed to be accountable for her own role. He denied pressuring Jane not to cooperate with the prosecutor.

{¶16} On cross examination, the prosecutor confronted appellant with appellee's Exhibits E and G. Appellant at first denied that his intent was to make Jane recant the allegations, although he admitted he asked her not to speak to the prosecutor and knew appellee would have a difficult time proving the case against him if Jane was uncooperative. When asked whether his goal was to have Jane not talk to the prosecutor, appellant said, "Correct." T.II, 345.

*Charges, trial, acquittals and conviction*

{¶17} Appellant was charged by criminal complaint with one count of intimidation of a victim pursuant to R.C. 2921.04(A), a misdemeanor of the first degree. Appellant entered a plea of not guilty.

{¶18} On March 22, 2022, appellee filed a motion to join case numbers CRB 2100572 (domestic violence and assault) and CRB 2101548 (intimidation) for purposes of trial. The trial court granted the motion on March 22, 2022. On March 26, 2022, appellant's memorandum in opposition to joinder was filed. On March 31, 2022, the trial court filed an "Entry on Reconsideration of Joinder" noting appellant's response but concluding joinder of the two cases pursuant to Crim.R. 8(A) and Crim.R. 13 was still appropriate.

{¶19} The matter proceeded to trial by jury. Appellant moved for judgment of acquittal pursuant to Crim.R. 29(A) at the conclusion of appellee's evidence and at the conclusion of all of the evidence; the motions were overruled. In case number CRB 2100572, appellant was found not guilty of assault and not guilty of domestic violence. In case number CRB 2101548, appellant was found guilty of intimidation of a victim. Sentencing was deferred until April 27, 2022, at which time appellant was sentenced to a jail term of 180 days with 160 days suspended and credit for one day served.

{¶20} Appellant now appeals from the trial court's final judgment entry of conviction and sentence dated April 27, 2022.

{¶21} Appellant raises three assignments of error:

## ASSIGNMENTS OF ERROR

{¶22} "I. THE TRIAL COURT ERRED IN ADMITTING IMPROPER CHARACTER EVIDENCE OF THE ACCUSED."

{¶23} "II. THE TRIAL COURT ERRED AS A MATTER OF LAW IN FAILING TO GIVE APPELLANT'S REQUESTED JURY INSTRUCTION ON INTIMIDATION."

{¶24} "III. THE STATE'S EVIDENCE WAS INSUFFICIENT TO PROVE INTIMIDATION AND THE APPELLANT'S CONVICTION FOR INTIMIDATION UNDER R.C. 2921.04(A) IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

## ANALYSIS

{¶25} For clarity, we will examine appellant's assignments of error out of order.

III.

{¶26} In his third assignment of error, appellant argues his conviction upon one count of intimidation is against the manifest weight and sufficiency of the evidence. We disagree.

{¶27} The legal concepts of sufficiency of the evidence and weight of the evidence are both quantitatively and qualitatively different. *State v. Thompkins*, 78 Ohio St.3d 380, 1997-Ohio-52, 678 N.E.2d 541, paragraph two of the syllabus. The standard of review for a challenge to the sufficiency of the evidence is set forth in *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991) at paragraph two of the syllabus, in which the Ohio Supreme Court held, "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt."

{¶28} In determining whether a conviction is against the manifest weight of the evidence, the court of appeals functions as the "thirteenth juror," and after "reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be overturned and a new trial ordered." *State v. Thompkins*, supra, 78 Ohio St.3d at 387. Reversing a conviction as being against the manifest weight of the evidence and ordering

a new trial should be reserved for only the "exceptional case in which the evidence weighs heavily against the conviction." *Id.*

{¶29} Appellant was found guilty upon one count of intimidation pursuant to R.C. 2921.04(A), which states: "No person shall knowingly attempt to intimidate or hinder the victim of a crime * * * in the filing or prosecution of criminal charges * * * and no person shall knowingly attempt to intimidate a witness to a criminal * * * act by reason of the person being a witness to that act." Appellant argues appellee's evidence failed to demonstrate that his conduct created fear in Jane Doe of negative consequences for the purpose of influencing her behavior, citing *State v. Price*, 5th Dist. Delaware No. 2019 CA 00019, 2020-Ohio-132.

{¶30} In *Price*, we noted R.C. 2921.04(A) does not require proof of an unlawful threat, but only an attempt to intimidate or hinder the victim or witness. *Id., ¶* 33. Intimidation by definition involves the creation of fear in a victim of negative consequences for the purpose of influencing behavior. *Id., ¶* 30, citing *State v. Cress*, 112 Ohio St.3d 72, 2006-Ohio-6501, 858 N.E.2d 341, ¶ 39-42. In *Price,* the state presented evidence of a telephone call in which the defendant told the victim if she did not change her story and persisted with the charges against him, she would be alone, would not have his income to help her pay rent, and they would dig themselves into a hole financially. We concluded that "[b]y stressing the negative consequences which would result if she persisted in the charges against him, [the defendant] created fear in [the victim] for the purpose of influencing her behavior" and found this to be sufficient evidence to support a finding of intimidation in violation of R.C. 2921.04(A). *Id., ¶* 33.

{¶31} A person violates R.C. 2921.04(A) if he or she knowingly attempts to intimidate **or** hinder a crime victim. There is no requirement of a threat. Further, *Cress* states that "to 'intimidate' means to 'make timid or fearful: inspire or affect with fear: frighten * * *; esp.: to compel to action or inaction (as by threats)." *Id.* at 77. The Ohio Supreme Court has yet to define the term "hinder" for the purposes of the statute. *State v. Blakovich*, 7th Dist. Columbiana No. 21 CO 0021, 2022-Ohio-3287, ¶ 21. "Hinder" is commonly defined as ,"to cause delay; interruption; or difficulty in; hamper; impede" or "to prevent from doing, acting, or happening; stop;" "hinder" is further defined as "to create difficulties for (someone or something), resulting in delay or obstruction." *Id.* at ¶ 22.

{¶32} In the instant case, appellant argues there is no evidence he stressed any negative consequences for the purpose of influencing Jane Doe's behavior. We find the record of the case to be replete with implied negative consequences for Jane; she repeatedly testified she was afraid to cooperate with police and the prosecution due to fear of retaliation by appellant. We disagree with appellant's premise placing the text messages in a vacuum apart from the context of the entire case. Jane Doe repeatedly testified about her fear of her husband; she called 911 during the assault because she was afraid; she told law enforcement she didn't want to file charges because she was afraid of appellant's reaction; and she described appellant as controlling, manipulative, and abusive. T. I., 80-82. Appellant discussed and minimized the incident with her beginning ten minutes after police left and continuing throughout the case, telling her she could "go against" the police officers' statements and not to talk to the prosecutor or answer the prosecutor's letters. For a while Jane didn't receive any mail and she feared

appellant took it. T. 91. Appellant told her "you will see what happens if you talk," which she took as a threat. T. 91-92.

{¶33} Jane specifically feared that appellant would be violent with her and that he might take her child away from her. She felt pressured not to cooperate with prosecution not only because of the text messages but also because of comments appellant made in person. T. I, 104-105.

{¶34} Regarding the manifest weight of the evidence, "an intimidation conviction turns on credibility determinations," i.e., whether Jane interpreted appellant's statements as a threat, and the jury is in the best position to determine matters of credibility. *State v. Parker*, 7th Dist. No. 15 MA 0174, 2017-Ohio-4382, 93 N.E.3d 164, ¶ 49. Based upon the timing of the texts in the immediate aftermath of Jane speaking to police, appellant's statement that "[y]ou can go against it" could be read as encouragement to not cooperate with police. See, *State v. Sanders*, 5th Dist. No. 15-COA-33, 2016-Ohio-7204, 76 N.E.3d 468, ¶ 43 [jury could conclude defendant sent threatening texts within minutes of V.M. threatening to call police; no requirement that victim felt intimidated]. See also, *State v. Greenberg*, 5th Dist. Delaware No. 96CA-A-05-029 (Mar. 21, 1997) [conviction under R.C. 2921.04(A) affirmed where the defendant called the victim and said "he was going to '... fucking k ...,' " and though the victim hung up, she believed the defendant was threatening to kill her].

{¶35} The jury was free to believe or disbelieve Jane's testimony regarding the effects of appellant's statements on her. The weight of the evidence and the credibility of the witnesses are determined by the trier of fact. *State v. Yarbrough,* 95 Ohio St.3d 227, 2002-Ohio-2126, 767 N.E.2d 216, ¶ 79. The testimony of a single witness, if believed by

the trier of fact, is sufficient to support a conviction. *State v. Cunningham,* 105 Ohio St.3d 197, 2004-Ohio-7007, 824 N.E.2d 504, at ¶ 51–57.

{¶36} The absence of a direct threat is not dispositive to a charge of intimidation. The Tenth District Court of Appeals sustained a conviction under R.C. 2921.04(A) wherein the defendant called his estranged girlfriend from jail where he was being held on a domestic violence charge and left the following message on her voicemail: "You gotta tell 'em I didn't do anything. Tell 'em I didn't touch you [.] * * * All you gotta do is tell 'em I didn't do anything, Erin." *State v. Stanley,* 10th Dist. Franklin No. 06AP-65, 2006-Ohio-4632, ¶ 15. The victim in *Stanley* felt as if the defendant was pressuring her and attempting to get her to change her story. *Id.* Despite no accompanying "threat," the Tenth District Court of Appeals concluded that any rational trier of fact could have found the essential elements of intimidation contained in R.C. 2921.04(A) proven beyond a reasonable doubt.

{¶37} Placed in the context of the entire trial, Jane's testimony and the texts established appellant committed intimidation. In *State v. Yambrisak,* 5th Dist. Richland No. 2012CA50, 2013-Ohio-1406, the defendant said in part, "I'm going to fuck you up." Acknowledging the vague language used, we cited the Supreme Court of Ohio's observation that "[t]he most intimidating threat of all may be an indefinite one ('You'll be sorry')." *State v. Cress,* 112 Ohio St.3d 72, 858 N.E.2d 341, 2006–Ohio–6501,¶ 37. The words chosen are themselves ambiguous and did not mention a particular criminal act or give other particulars. However, when taken in the context of Yambrisak's other rants the statement can take on a more troubling tone. *State v. Yambrisak,* 2013–Ohio–1406, ¶ 42. In the context of her troubled relationship with appellant, Jane perceived the

statements as intimidation. See also, *State v. Khaliq*, 5th Dist. Licking No. 15-CA-64, 2016-Ohio-7859, ¶ 31. Appellant admitted he intended to discourage Jane from cooperating with the prosecutor and Jane testified she was afraid to cooperate with police at the scene so she told them she didn't want appellant to be charged. See, *State v. Hodge*, 5th Dist. No. 2019 CA 00035, 2020-Ohio-3002, 154 N.E.3d 671, ¶ 75.

{¶38} We find appellee presented sufficient evidence to establish the elements of intimidation beyond a reasonable doubt. Construing all of the evidence in favor of appellee, sufficient evidence supports appellant's conviction. Also, this is not the case in which the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be overturned and a new trial ordered. Appellant's conviction is not against the manifest weight of the evidence.

{¶39} The third assignment of error is overruled.

II.

{¶40} In his second assignment of error, appellant argues the trial court should have given his requested jury instruction on intimidation. We disagree.

{¶41} Jury instructions are within the sound discretion of the trial court and the court's decision will not be disturbed on appeal absent an abuse of discretion. *State v. DeMastry*, 155 Ohio App.3d 110, 2003–Ohio–5588, 799 N.E.2d 229 (5th Dist.), ¶ 54, internal citations omitted. Jury instructions must be reviewed as a whole. *State v. Coleman*, 37 Ohio St.3d 286, 525 N.E.2d 792 (1988).

{¶42} A trial court has broad discretion to decide how to fashion jury instructions, but it must "fully and completely give the jury all instructions which are relevant and necessary for the jury to weigh the evidence and discharge its duty as the fact finder."

*State v. Lazzerini*, 5th Dist. No. 2019CA00142, 2021-Ohio-1998, 173 N.E.3d 907, *appeal not allowed,* 164 Ohio St.3d 1448, 2021-Ohio-3336, *reconsideration denied,* 165 Ohio St.3d 1490, 2021-Ohio-4409, ¶ 92, citing *State v. Price*, 162 Ohio St.3d 609, 2020-Ohio-4926, 166 N.E.3d 1155, ¶ 22. A reviewing court may not reverse a conviction in a criminal case due to jury instructions unless it is clear the jury instructions constituted prejudicial error. *Id.*, citing *State v. McKibbon*, 1st Dist. Hamilton No. C-010145, 2002-Ohio-2041, 2002 WL 727009, ¶ 4, internal citation omitted. Pursuant to Crim. R. 52(A), "[a]ny error, defect, irregularity, or variance which does not affect substantial rights shall be disregarded." *State v. Davis*, 5th Dist. Delaware No. 20CAA120052, 2022-Ohio-577, ¶ 39.

{¶43} In the instant case, the trial court instructed the jury as follows upon Count III, intimidation:

> * * * *.
>
> The Defendant is charged with intimidation of a victim in a criminal case. The elements of the offense of intimidation which the State must prove beyond a reasonable doubt are as follows: 1. The offense took place in the County of Fairfield, State of Ohio; 2. The offense took place on or about the 22nd day of June, 2021; 3. The defendant, Andres Camilo, Jr., did knowingly attempt to hinder [Jane Doe], the victim of a crime, in the filing or prosecution of criminal charges.
>
> Knowingly is the same definition.

Attempt is changed here. An "attempt" in this particular charge—an "attempt" occurs when a person knowingly engages in conduct that, if successful, would result in intimidation.

And intimidation—or intimidate. "Intimidate" means to frighten, scare, or bully.

* * * *.

T.II, 440.

{¶44} Appellant requested that the trial court include the following additional language: "Intimidation by definition involves creation of fear in a victim." The trial court declined to provide appellant's requested instruction because the additional verbiage is from the O.J.I. comments to the intimidation instruction; the trial court reasoned the additional language is superfluous clarification, not definition, of the offense. T.II, 381. The trial court sought not to confuse the jury by implying a "threat" was an element of the offense.

{¶45} The instructions provided the jury in the instant case were taken verbatim from O.J.I. While courts need not rely on OJI as proof that the instruction was factually correct, the instruction provided is a correct statement of the law pertinent to a violation of R.C. 2921.04(A). See, *State v. Alexander*, 5th Dist. Muskingum No. CA-91-34, 1992 WL 173306, *2.

{¶46} We do not find the trial court's instruction to be an abuse of discretion; nor do we find the instruction prejudiced appellant in any way. *State v. Rengert*, 5th Dist. Delaware No. 19 CAA 10 0056, 2021-Ohio-2561, ¶ 28. The instruction was a correct, pertinent statement of the intimidation statute as discussed supra in the third assignment

of error, and the trial court did not abuse its discretion in declining to include appellant's proposed "threat" language.

{¶47} Appellant's second assignment of error is overruled.

I.

{¶48} In his first assignment of error, appellant argues the trial court erred in admitting improper character evidence of the accused. We disagree.

{¶49} Appellant summarily argues the trial court improperly permitted appellee to introduce evidence of "prior incidents of alleged violence" and permitted Jane Doe to tell the jury appellant "had a history of putting 'his hands' on her in the past." Brief, 3. Upon our review of appellant's citations to the record, we note the following relevant testimony: Jane testified this was not the first incident of violence between the couple; she called 911 because she feared appellant; he had a history of putting his hands on her; and her fear of appellant was based in part on his past behavior. Jane did not testify to specific instances of alleged prior violence or provide further detail and the trial court limited appellee to generalities.

{¶50} Appellant argues admission of this evidence violates Evid.R. 404(B), which states, "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."

{¶51} As with any other type of evidence, admission of "other acts" testimony must not only meet the prerequisites of Evid.R. 404(B), but it must also meet the prerequisites

of Evid.R. 403(A) which requires the exclusion of relevant evidence if its "probative value is substantially outweighed by the danger of unfair prejudice."

{¶52} "Trial court decisions regarding the admissibility of other-acts evidence under Evid.R. 404(B) are evidentiary determinations that rest within the sound discretion of the trial court. Appeals of such decisions are considered by an appellate court under an abuse-of-discretion standard of review." *State v. Morris*, 132 Ohio St.3d 337, 2012-Ohio-2407, 972 N.E.2d 528, syllabus.

{¶53} The Ohio Supreme Court established a "three-step analysis" for trial courts considering the admission of other-acts evidence under Evidence Rule 404(B):

> The first step is to consider whether the other acts evidence is relevant to making any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence. Evid.R. 401. The next step is to consider whether evidence of the other crimes, wrongs, or acts is presented to prove the character of the accused in order to show activity in conformity therewith or whether the other acts evidence is presented for a legitimate purpose, such as those stated in Evid.R. 404(B). The third step is to consider whether the probative value of the other acts evidence is substantially outweighed by the danger of unfair prejudice. See Evid.R 403.
>
> *State v. Williams*, 2012-Ohio-5695, ¶ 19-20, 134 Ohio St.3d 521, 983 N.E.2d 1278.

{¶54} Admission of the limited other-acts evidence was not erroneous in the context of the intimidation charge. Jane testified she was in fear of appellant and believed he would retaliate if she cooperated with police in charging him, based in part upon their history; we believe it was neither unreasonable, arbitrary nor unconscionable for the trial court to determine this evidence was admissible to show intent, plan and/or scheme on the part of appellant to unlawfully prevent Jane from testifying on the underlying domestic violence and assault charges. *State v. Zobel*, 5th Dist. Tuscarawas No. 96AP060051, 1997 WL 220295, *8, appeal not allowed, 79 Ohio St.3d 1482, 683 N.E.2d 787. The other-acts evidence is relevant to give understanding and meaning to appellant's statements in the text messages and to Jane directly, and to her reaction thereto. *State v. Remley*, 5th Dist. Stark No. 1998CA0146, 1999 WL 4168, *5.

{¶55} Also, we note appellant opened the door to some other-acts evidence when defense trial counsel asked Jane on cross-examination whether she ever called police before on appellant. T. I, 114-115. See, *State v. Martin*, 5th Dist. Stark No. 2010 CA 00085, 2011-Ohio-810, ¶ 31 [appellant opened door to this line of questioning during cross-examination of victim attempting to elicit testimony appellant made no direct threats of imminent harm; victim's testimony on re-direct relevant to establishing her state of mind].

{¶56} Finally, even if the challenged testimony about other acts violated Evid.R. 404(B), the error was harmless. *State v. Hargraves*, 5th Dist. Muskingum No. CT2019-0045, 2020-Ohio-3569, ¶ 37. The Supreme Court has stated that "the real issue when Evid.R. 404(B) evidence is improperly admitted at trial is whether a defendant has suffered any prejudice as a result. If not, the error may be disregarded as harmless error.

And while courts may determine prejudice in a number of ways and use language that may differ, they focus on both the impact that the offending evidence had on the verdict and the strength of the remaining evidence." *State v. Morris*, 141 Ohio St.3d 399, 2014-Ohio-5052, 24 N.E.3d 1153, ¶ 25.

{¶57} In the instant case, appellant points to no evidence he was prejudiced by the other-acts testimony. Appellant was not convicted of domestic violence or assault, despite his admissions and the photographic evidence. The evidence of the intimidation offense was overwhelming, as we have reviewed at length supra in our discussion of the third assignment of error: appellee presented the text messages and Jane's testimony about her conversations with appellant, and appellant admitted he told Jane not to speak to the prosecutor because he knew a lack of cooperation would make the case against him harder to prosecute. We find no likelihood appellant was convicted of intimidation solely because of the other-acts evidence.

{¶58} Appellant's first assignment of error is overruled.

## CONCLUSION

{¶59} Appellant's three assignments of error are overruled and the judgment of the Fairfield County Municipal Court is affirmed.

By:  Delaney, J.,

Gwin, P.J. and

Wise, J., concur.